358 So.2d 569 (1978)
FIDELITY AND CASUALTY COMPANY OF NEW YORK, Appellant,
v.
Ana FONSECA, Appellee.
Ada Fernandez ROJAS, Appellant,
v.
FIDELITY AND CASUALTY COMPANY OF NEW YORK, Appellee.
Nos. 77-619, 77-1688.
District Court of Appeal of Florida, Third District.
May 2, 1978.
Rehearing Denied May 26, 1978.
*570 Bradford, Williams, McKay, Kimbrell, Hamann & Jennings and R. Benjamin Reid, Miami, for Fidelity and Casualty Co.
Horton, Perse & Ginsberg, Ratiner & Glinn, Miami, for Fonseca & Rojas.
Before PEARSON, NATHAN and KEHOE, JJ.
NATHAN, Judge.
These consolidated appeals emanate from separate decisions by two trial courts, each interpreting the provisions of a single automobile insurance policy as they relate to a specific incident. We must decide whether, in light of the particular facts involved, the subject policy provides either personal injury protection (PIP), liability coverage, neither, or both to a wife, who resided with her husband, for an accident which occurred when she was driving the husband's automobile, which was not scheduled as insured under the policy. We hold that, on the facts before us, the plain, unambiguous language of the policy provides neither PIP nor liability coverage.
Ada Rojas, the wife, owned a 1966 Ford Fairlane which was the only described vehicle on the declaration sheet of the policy issued to her, as the named insured, by Fidelity and Casualty Company of New York (F&C). On the date in question, July 15, 1975, the Ford was out of service and being repaired so Mrs. Rojas borrowed her husband's car, a 1968 Oldsmobile Cutlass, which was not scheduled as insured by the subject policy and for which no coverage premiums were paid. While driving the Oldsmobile, Mrs. Rojas was involved in an accident in which both she and a passenger, Ana Fonseca, were injured.
Both Mrs. Rojas and Ana Fonseca sought benefits under the policy, the former under its PIP coverage and the latter under its liability provisions. F&C denied coverage, and each woman instituted separate suits.
In the action brought by Mrs. Rojas against F&C (Case number 77-1688 in this court), summary judgment was granted in favor of F&C, the trial court ruling that no PIP coverage was available for the incident sued upon. In the suit brought by Ana Fonseca against Mrs. Rojas, as tortfeasor (Case number 77-619 in this court), summary judgment was granted in favor of Ms. Fonseca, the trial court finding that, as a matter of law, the husband's car qualified as a temporary substitute automobile, and the liability provisions of the subject policy afforded coverage to both Ada Rojas, as named insured, and Ana Fonseca, as third party beneficiary of the insurance contract. The court further found that the "severability of interests" clause contained in the policy also required a holding that coverage existed.
During the course of proceedings below Mrs. Rojas and Ana Fonseca settled and stipulated to the entry of judgment against Mrs. Rojas, with execution to be solely against F&C should coverage be determined *571 to exist. In these consolidated appeals, Mrs. Rojas is appellant in Case number 77-1688, and F&C is appellee; F&C is appellant in Case number 77-619, and the injured plaintiff, Ana Fonseca, is appellee.
Under Part I of the subject policy, which was in effect at all pertinent times, the following relevant liability coverage provisions were contained:
The company agreed to pay, on behalf of the insured, all sums which the insured became legally obligated to pay as damages because of bodily injury to any person "arising out of the ownership, maintenance, or use of the owned automobile or any non-owned automobile... ."
An "owned" automobile was defined as "a private passenger ... automobile described in this policy for which a specific premium charge indicates that coverage is afforded, ..."
A "non-owned" automobile meant one "not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile."
A "temporary substitute automobile" was defined as any automobile "not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile ... when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."
The term "named insured" was defined as "the individual named in item 1 of the declarations and also ... his spouse, if a resident of the same household."
Finally, under Part I, the following severability of interests clause was included:
"The insurance afforded under Part I [Liability] applies separately to each insured against whom claim is made or suit is brought, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability."
The availability of PIP coverage depended upon whether or not liability coverage was afforded under the policy.[1] Therefore our decision on F&C's appeal of the summary judgment in favor of Fonseca will be dispositive of Rojas' appeal of the summary judgment in favor of the insurance company.
There is no question but that no premiums were paid to F&C to cover the Cutlass, so it is clear that the husband's automobile was not an "owned" vehicle under the terms of the policy. Therefore, since the only way liability coverage could be found to exist would be to conclude that the husband's car was a "non-owned" vehicle used as a temporary substitute, the crucial issue in these appeals becomes whether or not the husband's car was a "non-owned" vehicle under the provisions of the liability sections of the subject policy.
F&C argues that the unambiguous language of the policy precludes such a finding, and that the case which controls the disposition of the instant appeals is Boyd v. United States Fidelity and Guaranty Company, 256 So.2d 1 (Fla. 1972). Rojas and Fonseca assert that the husband's car qualifies as a temporary substitute and that the case which should control our decision herein *572 is Shelby Mutual Insurance Company v. Schuitema, 183 So.2d 571 (Fla. 4th DCA 1966); affirmed, 193 So.2d 435 (Fla. 1967). They argue that Boyd did not deal with the applicability of a severability of interests clause and therefore should not be dispositive here, while Schuitema, which did deal with such a clause, should determine the result in the cases at bar.
We find Boyd almost directly on point, but deem an examination of both cases necessary in order that we may lay to rest any remaining misconceptions as to the applicability of a severability of interests clause to language such as that specifically at issue herein, that is, to policy provisions dealing with a single class of "named insureds" as opposed to provisions applicable to two different classes of "insureds."[2]
In Boyd, a husband was driving his wife's car at the time of the accident sued upon. When recovery was sought from the husband's insurer, the crucial issue (as in the cases sub judice, except that the parties were reversed; here we would substitute wife for husband and husband for wife) was whether the wife's car was a "non-owned" automobile under the liability provisions of the husband's insurance policy. The husband's insurer denied coverage on the basis of contractual language virtually identical to that in the policy herein under consideration.
The Boyd Court found that, since the wife was a "named insured" under the proviso in the husband's policy which defined a "named insured" as a spouse who resided in the same household, the wife's car could not be a "non-owned" vehicle. Therefore no liability was found and the husband's insurer was not obligated to pay. The court acknowledged the incongruity of the fact that the husband would be covered in almost any car in the world which he drove with the owner's permission except that of his wife, but found the clear language of the contract controlling, recognizing that the rationale of the exclusion was to prevent an individual from paying a single premium to secure coverage on other vehicles which he had the opportunity to use frequently, particularly in situations where members of a single household may have "two or more automobiles actually or potentially used interchangeably, but with only one particular automobile insured." 256 So.2d 1 at 5, citing 13 Couch on Insurance 2d, Section 45:1052 (1965). (Emphasis supplied.) See also Annot., 86 A.L.R.2d 937 (1962).
In Schuitema, a customer (Schuitema) of an auto dealer (Wilson) was permissibly occupying a vehicle for which liability coverage had been purchased by Wilson, the named insured, when an accident occurred, injuring one of Wilson's employees. The employee sued Schuitema, who requested Wilson's insurer to defend him as an additional insured under the policy issued to Wilson. The company denied coverage and refused to defend. After settling with the employee, Schuitema brought suit against Wilson's insurer.
At issue was the effect of a severability of interests clause upon a provision of Wilson's policy which denied liability coverage to an employee of "the insured." Both Wilson and Schuitema were "insureds" under the policy, but Wilson was also a "named insured." The question to be answered was: When there is more than one "insured," and claim is made against one of them, which one is the insured against whose employee the exclusion applies?
After noting that this was a situation in which the parties intended to furnish coverage to persons other than the named insured, the Schuitema Court held that the effect of the severability of interests clause *573 in that situation was "to make it certain that, when a claim is asserted against one who is an insured under the policy, then that person becomes `the insured' for the purpose of determining the insuror's [sic] obligation with respect to that claim. The exclusion as to employees of the insured is thus ... confined to the employees of the employer against whom the claim is asserted." 183 So.2d 571, at 574.
Schuitema is distinguishable from the instant cases in several respects, each of which convinces us that the application given to the severability of interests clause therein is not appropriate to the facts before us. First is that fact that in Schuitema, the vehicle involved in the accident was one for which premiums had been paid to provide liability coverage. This is not so in the instant cases.
Second, and most compelling, is the fact that the Schuitema Court applied the severability of interests clause to segregate the category of insureds classified as "named insureds" from that classified as "additional insureds" in order to establish the fact that coverage existed for the customer. The actual severance effected was between a named insured, the dealer whose employees were excluded from liability coverage, and an additional insured, the customer whose employees would also have been excluded had one of them brought suit against Schuitema alleging liability coverage under Wilson's policy. In sum, severance was not effected within a single category (named insureds) but between two different categories of insureds (named insureds and additional insureds).
We are asked to sever one named insured from another named insured, i.e., to effect a severance within an integrated class. The result of such a juristic act would be the circumvention of the plain language of the insurance contract under review. Our research reveals no instance in which reliance was placed upon Schuitema to achieve such a result.
Most cases in which Schuitema's holding was applied to provide coverage to one of two insureds involved employee exclusion clauses, not exclusions premised upon ownership of the insured vehicle. E.g., McRae v. Snelling, 303 So.2d 670 (Fla. 4th DCA 1974); Cochran v. State Farm Mutual Automobile Insurance Company, 298 So.2d 173, at 175 (Fla. 4th DCA 1974) (Owen, C.J., dissenting); General Insurance Company of America v. Reid, 216 So.2d 41 (Fla. 4th DCA 1968). Cf. Liberty Mutual Insurance Company v. Sentry Insurance Company, 288 So.2d 556 (Fla. 2d DCA 1974), where Schuitema's interpretation of a severability of interests clause was applied to an exclusionary provision other than an employee exclusion. However, it was applied to sever an employee (an additional insured) from his employer (a named insured) in order to establish that the relevant exclusion applied to the employer, not the employee, and to impose liability coverage on the insurer of an owned vehicle. And see Kohly v. Royal Indemnity Company, 190 So.2d 819 (Fla. 3d DCA 1966), wherein this court found Schuitema inapplicable to a situation where an additional insured sought to invoke its doctrine to provide uninsured motorist coverage after the named insured had specifically rejected such coverage. The Kohly Court pointed out that the term "named insured" has a restricted meaning and does not apply to any persons other than those named in the policy. Id. at 821.
As previously noted, Schuitema answered the question: When there are several insureds, which one is the insured against whom a claim is made for purposes of determining the applicability of an employee exclusion clause? We must answer a very different question: What is the coverage afforded by the subject policy to a named insured against whom a claim is made?
To further clarify the distinction between the two situations and to underscore the reasons why the doctrine of Schuitema is inapplicable to the facts at bar, one might diagram the cases in the following manner:
*574 [**]
Analysis of the above diagram makes it apparent that the severability of interests clause was applied in Schuitema to segregate two distinct classes of insureds, not to particularize within a single class.
Thus we return to the key question in the instant cases: What is the coverage afforded to Ada Rojas, the named insured against whom claim is made? Since she was not driving an "owned" vehicle as defined by the policy, she could only have been covered if she were driving a "non-owned" automobile. The policy defined a "non-owned" car as one not owned or furnished for the regular use of a named insured unless it was a temporary substitute automobile. But a temporary substitute was, by definition, also limited to an automobile not owned by a named insured. Having explained why the concept of severability does not apply to a single class of named insureds, we are left with the unambiguous language of the policy which defined "named insured" as including a resident spouse. We can only conclude that no liability coverage existed under the policy issued to Ada Rojas by F&C. The holding in Boyd is dispositive of this question.[3]
*575 The rationale underlying such inclusion of both resident spouses within the definition of a named insured is clear and reasonable. It was intended to protect the insurer from assuming risks for which premium payments were not elicited in situations where such risks were likely to eventuate. Whether or not they actually use one another's cars with any degree of regularity or frequency, husbands and wives who reside in the same household potentially have their spouse's vehicles available for use on a regular basis. If inclusion of both spouses under the definition "named insured" were not given its plain meaning, two or more vehicles could be covered by payment of a single premium and the insurer would not only assume risks for which it was uncompensated, but also lose additional premiums it might otherwise receive. See Annot., 34 A.L.R.2d 936 (1954); Annot., 83 A.L.R.2d 926 (1962); 7 Am.Jur.2d, Automobile Insurance, Sections 103 and 107 (1963).
Accordingly, we hold that the subject policy was not intended to cover, and did not in fact cover, a vehicle which Mrs. Rojas potentially could use on a regular basis, and that, as a matter of law, the clear language of the policy excludes liability on the facts before us. Boyd v. United States Fidelity and Guaranty Company, supra; LaViolette v. Sapp, 278 So.2d 598 (Fla. 1973).
Case number 77-1688 is affirmed. Case number 77-619 is reversed with directions to enter an order granting summary judgment for appellant therein, Fidelity and Casualty Company of New York.
NOTES
[1] Under the PIP provisions of the policy, the definition of a "named insured" also included the resident spouse of the individual named in the declarations. The PIP section of the policy further stated that the named insured would be excluded from coverage if an occupant of a vehicle of which the named insured was the owner if that vehicle were not an "insured motor vehicle." An "insured motor vehicle" was defined therein as one to which the liability insurance of the policy applied. In this way the two sections of the policy, PIP and liability coverage, were interrelated, and the one depended on the other.

While F&C asserts that it did not deny PIP coverage on the basis of provisions contained in the liability section of the policy, the record before us indicates that the language of the PIP provisions is such as to make determination of whether the liability provisions apply conclusive as to both appeals.
Moreover, Appellant Rojas specifically adopted as grounds for reversal the arguments of Appellee Fonseca in the companion appeal, although she also asserted other grounds which we deem to be without merit.
[2] As pointed out by F&C in its brief, it is likely that the policy at issue in Boyd did contain a severability of interests clause since such a clause is standard in most policies of relatively recent vintage. However, because the issue was not presented in Boyd, it becomes necessary to confront it here.
[**] A similar diagram would cover the initial suit in Boyd, for it was brought by a claimant who was injured when struck by the wife's car which was being driven by the husband.
[3] We are constrained to point out that dictum in Boyd might be construed as implying that one spouse's car could qualify as a temporary substitute automobile under certain circumstances.

After pointing out that the automobile in question was owned at the time of the accident by a named insured and hence could not qualify as a non-owned automobile under the policy definition, the Boyd Court went on to say: "Nor can Wife's car qualify as a temporary substitute automobile since Husband's car was in good working order at all [pertinent] times... ." 256 So.2d 1 at 4.
We note first that this statement referred to a hypothetical situation, not before the court. Second, any inference that, if the husband's car had been out of service the wife's car could have qualified as a temporary substitute must be discounted for two reasons, both evident from the opinion itself. (1) The Boyd Court made it clear that the unambiguous language of the contract of insurance controls, and that a vehicle owned by a named insured "cannot qualify as a non-owned automobile within the policy definition." (2) The rationale of Boyd depended on a consideration of the purpose of the exclusion at issue, which was stated as prevention of "a situation in which members of one family ... may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured." Id. at 5.
Both reasons compel our conclusion that the dictum from Boyd should not be construed to infer that one spouse's car may be a temporary substitute for the car of the other spouse when both are defined as named insureds by the insurance contract. See Couch on Insurance 2d, § 45:235 (1964); Campbell v. Ryan, 342 So.2d 912 (Sup.Ct.Ala. 1977); Cotton States Mutual Ins. Co. v. Bowden, 136 Ga. App. 499, 221 S.E.2d 832 (1975); Illinois National Insurance Co. v. Trainer, 1 Ill. App.3d 34, 272 N.E.2d 58 (1971), all of which make it clear that under the provisions of a policy which defines a temporary substitute automobile as one not owned by the named insured, and defines a named insured to include a resident spouse, a car owned by one resident spouse cannot qualify as a temporary substitute vehicle for the other spouse.