(92 P.3d 1121)

No. 91,326

GEICO GENERAL INSURANCE COMPANY, *Appellee*, v.
TIM HANZLIK and WENDY HANZLIK, *Appellants*.

Opinion filed July 9, 2004.

*John J. Bryan*, of Bryan, Lykins, Hejtmanek & Fincher, P.A., of Topeka, for appellants.

*Leonard R. Frischer*, of Frischer & Associates, Chtd., of Overland Park, for appellee.

Before GREEN, P.J., JOHNSON, J., and C. FRED LORENTZ, District Judge, assigned.

JOHNSON, J.: Tim and Wendy Hanzlik appeal the granting of summary judgment to Geico General Insurance Company (Geico) in Geico's declaratory judgment action which sought the district court's construction of its automobile insurance policy issued to Tim. Finding that the district court correctly construed the policy and applicable law, we affirm.

The facts are straightforward and, for purposes of this opinion, uncontroverted. Tim and Wendy were married July 4, 1999. Prior to the marriage, Tim owned a 1992 Honda insured with Geico;

Wendy owned a 1999 Toyota insured with State Farm Mutual Insurance Company. Following the marriage, Tim and Wendy continued to individually own their respective automobiles and maintained their separate Geico and State Farm insurance policies.

On August 21, 1999, Tim was operating Wendy's 1999 Toyota; Wendy was a passenger. The couple opted to use Wendy's car because Tim's vehicle was apparently unavailable because of breakdown, repair, or servicing. Tim had a one-car accident which severely injured Wendy. Wendy sued Tim on August 20, 2001.

On September 18, 2001, Geico notified Tim that the company had retained an attorney to represent him in the lawsuit. On September 28, 2001, Geico filed this declaratory judgment action, requesting a construction of its policy which would not provide liability protection for either Tim or Wendy or provide any form of recovery for Wendy. On October 9, 2001, Geico sent Tim a letter advising that the company would undertake his defense, but "under a complete reservation of all rights based on the terms, conditions and exclusions of the policy which you held with [Geico] at the time of the accident and during the time of the allegation."

State Farm, the primary insurer of Wendy's Toyota, paid its $50,000 policy limits. Geico provided Tim's defense against Wendy's lawsuit, which resulted in a judgment of $200,000, plus costs. However, Wendy agreed to satisfy the judgment upon receipt of all applicable insurance payments, *i.e.*, Tim would owe nothing out-of-pocket regardless of whether Geico was found to owe Wendy its policy's $50,000 bodily injury liability limit.

The declaratory judgment action was decided upon Geico's dispositive motion for summary judgment. In a clear, concise, and well-reasoned memorandum of decision, the district court found: (1) Geico's automobile policy was not ambiguous; (2) the policy only provided coverage for Tim's use of the owned auto or a non-owned auto; (3) by clear policy definition, Wendy's Toyota was neither an "owned auto" or a "non-owned auto"; and (4) Tim's claim that Geico was estopped from denying coverage by an equivocation in its reservation of rights letter failed because Tim was not harmed by Geico's providing him a defense.

On appeal, we perceive some obfuscation in the presentation of the issues. We take the liberty of distilling the questions presented for our review and restate them as follows: (1) whether Geico's policy must be construed to cover Wendy's Toyota as Tim's "owned auto" because it was a "temporary substitute auto"; and (2) whether Geico is precluded from denying Tim bodily injury liability coverage after providing Tim's defense to the lawsuit. For the reasons set forth below, our answer to both questions is no.

## TEMPORARY SUBSTITUTE AUTO

As noted, the final order preceding appeal was a summary judgment, which would ordinarily prompt a recitation of the well-established standard of review applicable to summary judgments. See *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002). However, this case will be resolved by interpreting an insurance contract, which is a question of law over which we have de novo review without any requirement that we defer to the district court's interpretation. See *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 694, 962 P.2d 515 (1998).

The Hanzliks' appeal addresses the bodily injury liability coverage, which is set forth in Section I of Geico's policy. The policy describes the payable losses under Section I as follows:

"**LOSSES WE WILL PAY FOR *YOU* UNDER SECTION I**

Under Section I, we will pay damages which an ***insured*** becomes legally obligated to pay because of:

1. ***bodily injury***, sustained by a person, and;
2. damage to or destruction of property, arising out of the ownership, maintenance or use of the ***owned auto*** or a ***non-owned auto***. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit."

Preceding the recitation of covered losses, the policy states that the words which are italicized in Section I are defined as set forth in the definitions section which follows. The definition of *"insured"* sends the reader to the "PERSONS INSURED" section, which includes *"you"* as an *"insured"* for both owned and non-owned autos. The other pertinent definitions are:

"5. *'Non-owned auto'* means an automobile or *trailer* not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*.

"6. *'Owned auto'* means:

    (a) a vehicle described in this policy for which a premium charge is shown for these coverages;

    (b) a *trailer* owned by *you*;

    (c) a *private passenger, farm* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for six months or more, if

        (i) it replaces an *owned auto* as defined in (a) above; or

        (ii) we insure all *private passenger, farm* and *utility autos* owned or leased by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;

    (d) a *temporary substitute auto*.

    . . . .

"8. *'Relative'* means a person related to *you* who resides in *your* household.

"9. *'Temporary substitute auto'* means an automobile or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

    . . . .

"14. *'You'* means the policyholder named in the declarations and his or her spouse if a resident of the same household."

Appellants do not dispute that, at the time of the accident, Wendy was Tim's spouse and that the two resided in the same household. Therefore, by the clear language of the policy, Wendy fit within the definitions of both *"you"* and *"relative."* Therefore, Wendy's Toyota was an automobile owned by "either *you* or a *relative*," which by policy definition cannot be a "nonowned auto" for Tim. The Hanzliks conceded this point at oral argument.

The Hanzliks argue that Tim's Honda was "withdrawn from normal use because of its breakdown, repair, servicing" and, therefore, Wendy's Toyota was being used by Tim as a *"temporary substitute auto,"* which is an "owned auto" by policy definition. However, whether Tim's car was withdrawn from use is of no consequence, because the policy definition of *"temporary substitute auto"* contains the specific requirement that the automobile not be owned by *"you,"* i.e., an automobile owned by either Tim or his resident spouse does not qualify. Wendy was married to Tim; Wendy lived

with Tim; Wendy owned the Toyota; the Toyota was "owned by you"; therefore, the Toyota was not a *temporary substitute auto.* None of the other definitions of an *"owned auto"* applied to the Toyota.

The Hanzliks present several arguments in support of a policy construction which circumvents the specific and plain policy definitions. However, we perceive that appellants are principally relying on the following two propositions: (1) that the Geico policy terms did not conform to Kansas statutes, requiring a construction which would comport with Kansas law; and (2) that the Geico policy is ambiguous, requiring a construction in favor of the insured.

*Conformity with Kansas law*

The Kansas Automobile Injury Reparations Act (KAIRA) (K.S.A. 40-3101 *et seq.*) requires that every Kansas motor vehicle liability insurance policy shall be construed "to meet all the mandatory requirements and obligations of this act." K.S.A. 40-3107(g). The Geico policy specifically acknowledges that "[a]ny terms of this policy in conflict with the statutes of Kansas are amended to conform to those statutes." The Act states, in pertinent part:

"Every policy of motor vehicle liability insurance issued by an insurer to an owner residing in this state shall:

"(a) Designate by explicit description or by appropriate reference of all vehicles with respect to which coverage is to be granted;

"(b) insure the person named and any other person, as insured, using any such vehicle with the expressed or implied consent of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of any such vehicle within the United States of America or the Dominion of Canada, subject to the limits stated in such policy." K.S.A. 40-3107.

Geico's policy, issued to Tim, explicitly described the 1992 Honda and appropriately referred to all vehicles for which the company would grant coverage. With respect to Tim's Honda, the policy insured Tim, Wendy, and any other person driving the Honda with the expressed or implied consent of either Tim or Wendy. Thus, the Geico policy met the basic requirements of Kansas mandatory insurance law.

Appellants' brief attempts to support their argument that Geico's policy contravenes the KAIRA with citations to outdated cases

dealing with what was known as the "household exclusion." That policy provision excluded liability coverage for bodily injury suffered by the insured or any member of the insured's family residing in the same household. The Geico policy did not contain a household exclusion, and the cited cases are simply inapplicable. We are not dealing with a determination of which victims are covered, but rather the question is which vehicles are covered.

Further, the cases that voided the household exclusion are not analogous. Those cases were based on the rationale that the exclusion could act to deny an injured party any liability benefits. Here, the State Farm policy provided Tim with liability coverage, as a permissive driver under the State Farm policy's omnibus clause, and State Farm paid the liability coverage benefits to Wendy.

The Hanzliks argue that Geico's refusal to provide Tim with liability coverage while driving his wife's car could have resulted in Tim being without any liability protection, if the wife's automobile had been uninsured. The hypothetical is not persuasive. K.S.A. 40-3104(a) required that Wendy provide motor vehicle liability insurance coverage on the Toyota; K.S.A. 40-3104(b) prohibited Wendy from permitting Tim to drive the Toyota without insurance; K.S.A. 40-3104(c) prohibited Tim from driving the Toyota if he were to know it was uninsured. The Hanzliks point us to no provision of the KAIRA, nor do we find any provision which requires Geico to provide Tim liability coverage on Wendy's vehicle, based upon the possibility that Wendy or Tim or both of them might have been violating the law.

Geico's automobile insurance policy issued to Tim complied with Kansas law. We need not rewrite the policy.

*Ambiguity*

The Hanzliks claim Geico's insurance policy is ambiguous. Whether a written instrument is ambiguous presents a question of law subject to de novo review. See *Investcorp, L.P. v. Simpson Investment Co., L.C.*, 267 Kan. 840, 847, 983 P.2d 265 (1999).

The Hanzliks point us to the familiar rules of construction for insurance contracts. "If the policy is not ambiguous, it is enforced as made, but if it is ambiguous, it is given the construction most

favorable to the insured." *Colfax v. Johnson,* 270 Kan. 7, 11, 11 P.3d 1171 (2000). Ambiguity is tested by "what a reasonably prudent insured would understand the language to mean." 270 Kan. at 11.

The Hanzliks attempt to manufacture an ambiguity by focusing on the policy term, "you." First, the Hanzliks point to the policy preamble which recites that the company makes the agreement "with *you,* the policyholder" and contend that Tim was the only listed policyholder. Therefore, the Hanzliks argue, describing *"you"* as the individual policyholder in the preamble conflicts with the definitions section which includes the resident spouse in the term, *"you."* We disagree. The preamble precedes Section 1— Liability Coverages. The policy states that the "words italicized in Section I of this policy are defined below," *i.e.,* the definition of "you" at issue specifically applied to Section I, not the preamble. Therefore, there is no conflict.

Next, the Hanzliks note that the **"You"** in paragraph 14 of the definitions section is typed in boldface. Therefore, the Hanzliks argue that the definition cannot be applied to those instances in the policy where *"you"* is typed in lower case and italicized. The argument is strained and without merit. The policy contains but one definition for "you," without distinguishing the manner in which the word is typed. A reasonably prudent insured would understand that **"You"** means the same as *"you"* or *"**you**"* or "You."

Finally, the Hanzliks argue: "The strained construction sought by GEICO of the word 'you' meaning only its named insured part of the time and meaning the named insured and his wife of 7 weeks on other occasions, results in the defined phrase 'non owned auto' as actually meaning an 'owned auto.' " The brief proceeds to contend that a lay person would be expected to understand that Wendy's Toyota would not be Tim's "owned auto." We confess to some difficulty following the thread of this argument. Nevertheless, a consumer's common perception of the meaning of words does not create an ambiguity in the plain language of the insurance policy definition.

Without exerting a herculean effort to manufacture a convolution of the plain and straightforward policy language, a reasonable

insured would have no difficulty understanding that when a Section I policy provision refers to "you" it means both Tim and Wendy. We decline to create an ambiguity where one does not exist. Therefore, the rule requiring construction in favor of the insured is not invoked. See *Decatur County Feed Yard, Inc. v. Fahey*, 266 Kan. 999, 1005, 974 P.2d 569 (1999) (if written instrument has clear language and can be carried out as written, rules of construction are unnecessary). The plain policy language excludes Wendy's Toyota from the definition of a "temporary substitute auto" and, therefore, the Toyota did not fit within the policy definition of either an "owned auto" or a "non-owned auto." Geico's policy provided Tim liability coverage only while he was operating, maintaining, or using an "owned auto" or a "non-owned auto"; Geico's policy did not provide Tim liability coverage for operating Wendy's Toyota.

*Rationale*

The overarching tenor of the Hanzliks' arguments is that not effecting a construction of Tim's policy which would have provided him with liability coverage while he was driving Wendy's Toyota is fundamentally unfair, given that he paid a premium for liability coverage. Decisions from other jurisdictions provide some insight into the rationale behind denying Tim coverage. In *Boyd v. United States Fidelity & Guaranty Co.*, 256 So. 2d 1 (Fla. 1971), the Florida Supreme Court denied coverage under virtually identical facts and identical policy language, and explained:

"The rationale behind inclusion of a 'drive other cars' or 'non-owned automobile' provision in an automobile insurance policy is summed up succinctly in Couch on Insurance:
" ' Consideration of purpose of "drive other cars" provision. The purpose of the "drive other cars" provision in an automobile liability policy is to cover occasional or incidental use of other cars without a corresponding increase in the premium. The policy is not intended to cover the insured against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to use. More specifically, the evident intention of the limitation with respect to other automobiles is to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured." 13 Couch on Insurance 2d § 45:1052, p. 68 (1965).' " 256 So. 2d at 5.

In *Fidelity & Cas. Co. of New York v. Fonseca*, 358 So. 2d 569, 574-75 (Fla. App. 1978), under similar facts and similar policy language, the court held the wife's policy excluded coverage when she was driving husband's vehicle, which was not a scheduled vehicle on the wife's policy and for which no premiums were paid. Addressing the policy's "temporary substitute auto" provision, the court stated:

"[T]he dictum from *Boyd* should not be construed to infer that one spouse's car may be a temporary substitute for the car of the other spouse when both are defined as named insureds by the insurance contract. See Couch on Insurance 2d, § 45:235 (1964); *Campbell v. Ryan*, 342 So. 2d 912 (Sup. Ct. Ala. 1977); *Cotton States Mutual Ins. Co. v. Bowden*, 136 Ga. App. 499, 221 S.E.2d 832 (1975); *Illinois National Insurance Co. v. Trainer*, 1 Ill. App. 3d 34, 272 N.E.2d 58 (1971), all of which make it clear that under the provisions of a policy which defines a temporary substitute automobile as one not owned by the named insured, and defines a named insured to include a resident spouse, a car owned by one resident spouse cannot qualify as a temporary substitute vehicle for the other spouse." 358 So. 2d at 574-75 n.3.

The *Fonseca* court explained that the rationale of including both resident spouses within the definition of a named insured (referred to as "you" in the Geico policy) was both clear and reasonable:

"[The inclusion of both resident spouses within the definition of a named insured] was intended to protect the insurer from assuming risks for which premium payments were not elicited in situations where such risks were likely to eventuate. Whether or not they actually use one another's cars with any degree of regularity or frequency, husbands and wives who reside in the same household potentially have their spouse's vehicles available for use on a regular basis. If inclusion of both spouses under the definition 'named insured' were not given its plain meaning, two or more vehicles could be covered by payment of a single premium and the insurer would not only assume risks for which it was uncompensated, but also lose additional premiums it might otherwise receive. See Annot., 34 A.L.R.2d 936 (1954); Annot., 83 A.L.R.2d 926 (1962); 7 Am. Jur. 2d, Automobile Insurance, Sections 103 and 107 (1963)." 358 So. 2d at 575.

Although unnecessary to our decision, we are comfortable that construing the Geico policy precisely as it is written comports with common sense and sound public policy. The district court's insurance contract construction is affirmed.

*ESTOPPEL*

Finally, the Hanzliks contend that Geico's October 9, 2001, letter "did 'not fairly and adequately inform the insured of the insurer's position' " with respect to Geico's reservation of rights and, therefore, Geico is estopped from denying coverage. In the context of liability insurance, the general rule of estoppel was first stated in *Snedker v. Derby Oil Co., Inc.*, 164 Kan. 640, 643, 192 P.2d 135 (1948) (quoting 29 Am. Jur. 672 § 878):

" 'The general rule supported by the great weight of authority is that if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground for forfeiture or noncoverage.' "

A party asserting equitable estoppel must show that another party, by acts, representations, admissions, or silence when he or she or it had a duty to speak, induced the party asserting estoppel to believe certain facts existed. The party asserting estoppel must also show that the party rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991). The district court made the negative finding that the Hanzliks had not carried their burden of proving prejudice. An appellate court will not disturb a negative finding absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. *In re Estate of Haneberg*, 270 Kan. 365, 374, 14 P.3d 1088 (2000).

Geico's letter explicitly informed Tim that Geico would be defending him under a reservation of rights. Further, the letter detailed the policy provisions that brought coverage into question and specifically informed Tim that "it appears that the vehicle in question [1999 Toyota] may not fit the definition of a 'non-owned auto,' an 'owned auto' or 'temporary substitute auto' in the policy." No reasonable person could read the letter without believing that Geico was unequivocally reserving all of its rights under its policy. Geico was not estopped to claim that Wendy's Toyota was not covered by the policy. Tim, having received a defense from Geico

when the policy did not require it, was certainly not prejudiced by Geico's assertion of the very rights of which he had been informed.

Affirmed.