Sheryl **LOPEZ**, as Assignee of Timothy Montoya, **Plaintiffs,**

v.

**GEICO GENERAL INSURANCE COMPANY, Defendant.**

Case No.: 8:15-cv-349-MSS-MAP

United States District Court, M.D. Florida, Tampa Division.

Signed 07/22/2016

Kathryn Elizabeth Lee, Kevin Britt Woods, Harmon, Woods, Parker, Hen-dricks & Abrunzo, PA, Tampa, FL, for Plaintiffs.

Lewis F. Collins, Jr., Butler Weihmuller Katz Craig LLP, Tampa, FL, for Defendant.

## ORDER

MARY S. SORIVEN, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** comes before the Court for consideration of Defendant's Motion for Final Summary Judgment (Dkt. 24), Plaintiff's response in opposition thereto (Dkt. 30), Plaintiff's Motion for Summary Judgment as to Count I (Dkt. 25), Defendant's response in opposition thereto (Dkt. 29), and Plaintiff's reply in support of her motion for summary judgment. (Dkt. 33) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

## I. BACKGROUND

### A. Factual History

This action arises from an underlying negligence suit in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. (Dkt. 28 at ¶ 1) In that underlying action, entitled Sheryl Lopez v. Timothy Montoya, et al., Case No. 14–CA–7348, Div. C, Plaintiff Sheryl Lopez sued Timothy Montoya for negligence as the result of an automobile collision that occurred on April 22, 2014. (Id. at ¶ 2) Montoya was insured by Defendant GEICO General Insurance Company, which issued policy Number 4259-90-94-81 to insure his 2009 Volkswagen Passat. (Id. at ¶ 5)

At the time of the collision, Montoya was not driving the Passat. Instead, he was operating a 2003 Suzuki Vitara owned by his girlfriend, Alexandra Medina. (Id. at ¶¶ 3, 14) Medina and Montoya reside to-

gether but are not married. (Id. at ¶ 16) The title to the Vitara was solely in Medina's name. (Id. at ¶ 15) In October 2012, shortly after Montoya moved into Medina's residence, he added the Vitara to his GEICO policy. (Dkt. 24–3 at 12)

In April 2013, Montoya and Medina purchased a 2012 Chevrolet Impala. (Dkt. 28 at ¶ 18) From April 2013 until December 7, 2013, both the Vitara and the Impala were insured under the Policy. (Dkt. 24–2 at 6) However, as months passed, the Vitara sat unused in the couple's driveway. (Id. at 7) Medina had initially planned to gift the Vitara to her son, but subsequently decided against it and had no further intention of using the Vitara. (Id. at 7-9) Montoya therefore suggested that they drop the Vitara from the Policy to save money. (Id. at 23) On December 7, 2013, he called GEICO to request that the Vitara be removed from the Policy. (Id. at 8) On that same day, GEICO issued a new declarations page that listed the Passat and the Impala as the only covered vehicles. (Dkt. 24–3) In a section entitled "Important Policy Information," the declarations page stated: "The 2003 Vitara has been deleted from your policy." (Id.)

Although Montoya and Medina removed the Vitara from the Policy, it was fully operable and they continued to keep it parked on their property. (Dkt. 28 at ¶ 19) On several occasions when Montoya's Passat was in the shop for repairs, Medina gave him permission to use the Vitara. (Dkt. 24–2 at 7) Montoya was driving the Vitara with Medina's permission on the date of the collision. (Dkt. 28 at ¶ 17)

Following the April 2014 collision, Montoya submitted a timely claim to GEICO. (Id. at ¶ 7) In a May 8, 2014 letter addressed to Medina, GEICO denied coverage for the collision, stating, "This denial is made because the 2003 Vitara was not a listed vehicle on the policy and does not meet the definition of a non-owned vehi-

cle." (Dkt. 24–3 at 19) After subsequently receiving a copy of the complaint in the underlying action, GEICO sent Medina another letter denying coverage on August 29, 2014. (Id. at 21) That letter stated, "[o]ur investigation revealed that we are unable to extend coverage under Timothy Montoya's policy for the above-captioned loss because the vehicle involved does not meet the definition of an owned, non-owned, or temporary substitute vehicle. The 2003 Vitara was removed from the policy per your request, effective December 7, 2013." (Id.)

On November 20, 2014, Lopez and Montoya executed a Joint Stipulation and Assignment of Claims to resolve the negligence action. (Dkt. 28 at ¶ 12) Final Judgment was entered in favor of Lopez and against Montoya in the principal amount of $485,000.00. (Id. at ¶ 13)

### B. Procedural History

Lopez, as Montoya's assignee, filed this action on January 27, 2015 in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. GEICO removed the action to federal court on February 19, 2015. In her Complaint, Lopez asserts two counts, one for declaratory relief seeking coverage for the collision and another seeking damages for breach of contract based on GEICO'S denial of coverage. Upon the joint motion of the parties, the Court bifurcated the two counts, staying the breach of contract/damages claim pending the determination of the liability claim, which is now before the Court on the parties' cross-motions for summary judgment.

### II. LEGAL STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as

a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir.2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir.2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991). Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216.

A moving party discharges its burden by showing there is an absence of evidence to support the non-moving party's case. Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir.2010). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1321 (11th Cir.2006). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir.1985) ("conclusory allegations without specific supporting facts have no probative value."). Any such proffered evidence must be subject to being reduced to admissible evidence at trial. Denney v. City of Albany, 247 F.3d 1172, 1190 n.10 (11th Cir.2001) ("In considering a summary judgment motion, a court may only consider evidence that is admissible or that could be presented in an admissible form."). Abject hearsay cannot be offered to meet the required evidentiary showing. If material issues of fact exist that would not allow the Court to resolve an issue as a matter of law, the Court must not decide them, but rather, must deny the motion and proceed to trial.

## III. DISCUSSION

The parties agree that there are no material facts in dispute and their respective motions for summary judgment are limited to the interpretation of the Policy. (See Dkt. 24 at 2, 6; Dkt. 25 at 2) The Policy states that it shall be interpreted pursuant to Florida law. (Dkt. 25–1 at 41) Under Florida law, the interpretation of an insurance policy is a question of law to be determined by the Court. Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., 254 F.3d 987, 1003 (11th Cir.2011).

The principles of contract interpretation require that a court first examine the natural and plain meaning of the language of an insurance policy. Key v. Allstate Ins. Co., 90 F.3d 1546 (11th Cir. 1996). Courts "must construe an insurance contract in its entirety, striving to give every provision meaning and effect." Dahl–Eimers v. Mut. of Omaha Life Ins. Co., 986 F.2d 1379, 1381 (11th Cir.1993) (citing Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 941 (Fla. 1979)). "Under Florida law, if the terms of an insurance contract are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning, and unless an ambiguity exists, a court should not resort to outside evidence or the complex rules of construction to construe the contract." Key, 90 F.3d at 1549. The Court should not "create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions" and should give the words "their natural, ordinary meaning." Id. The Court should be mindful that "ambiguity does not exist simply because a contract requires interpretation or fails to define a term." Id. (internal citations omitted).

In the section entitled "Liability Coverages," the Policy states as follows:

**LOSSES WE WILL PAY FOR YOU**

Under Section I, we will pay damages which an ***Insured*** becomes legally obligated to pay because of:

1. ***Bodily injury***, sustained by a person, and

2. Damage to or destruction of property, arising out of the ownership, maintenance or use of the ***owned auto*** or a ***non-owned auto***.

We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit. We have no duty to investigate or defend any claims which are not covered under the terms of this policy. Our duty to defend ends when the limits of liability for bodily injury liability have been exhausted by payments of judgments or settlements.

(Dkt. 25–1 at 26-27)

The policy defines an "Insured" as "a person or organization described under **PERSONS INSURED**." (Id. at 28) The "persons insured" provision of the policy states as follows:

**PERSONS INSURED**

Who Is Covered

Section I applies to the following as ***Insureds*** with regard to an ***owned auto:***

1. ***You***;

2. Any other person using the auto with ***your*** permission to the extent of that permission;

3. Any other person or organization for his or its liability because of acts or omissions of an ***Insured*** under 1. or 2. above.

Section I applies to the following as ***Insureds*** with regard to a ***non-owned auto***:

1. ***You*** and ***your relatives*** when driving the ***non-owned auto***. Such use must be with the permission, or reasonably believed to be with the permission, of the owner and to the extent of that permission.

2. A person or organization, not owning or hiring the auto, regardless of his or its liability because of acts or omissions of an ***Insured*** under 1. above.

Id.

The parties agree that Montoya met the definition of an Insured at the time of the collision. (See Dkt. 24 at 8; Dkt. 25 at 12). Lopez also concedes that the claim did not arise out of use of a non-owned auto. (Dkt. 25 at 12) Accordingly, the issue for the Court to resolve is whether the Vitara was an owned auto at the time of the collision.

The Policy defines an "owned auto" as follows:

6. ***Owned auto*** means:

(a) a vehicle described in this policy for which a premium charge is shown for these coverages;

(b) a ***trailer*** owned by ***you***;

(c) a ***private passenger, farm*** or ***utility auto***, ownership of which ***you*** acquire during the policy period or for which ***you*** enter into a lease during the policy period for a term of six months or more, if

(i) it replaces an ***owned auto*** as defined in (a) above; or

(ii) We insure all ***private passenger, farm*** and ***utility autos*** owned by ***you*** on the date of the acquisition, and ***you*** ask us to add it to the policy no more than 30 days later;

(d) ***A temporary substitute auto***.

(Dkt. 25–1 at 26)

It is undisputed by the parties that at the time of the collision, the Vitara was not: (1) a vehicle for which a premium was

charged under the policy, (2) a trailer, or (3) a private passenger, farm, or utility auto acquired during the policy period. Thus, the Vitara was an owned auto only if it was a temporary substitute auto. Pursuant to the Policy:

*Temporary substitute auto* means a *private passenger, farm* or *utility auto* or *trailer* not owned by *you* or *your relative*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction. . . .

Id.

Lopez contends that the Vitara was a temporary substitute auto at the time of the collision because Montoya was using it with Medina's permission while his Passat was being repaired.[1] GEICO asserts that the Vitara was not a temporary substitute auto because the unambiguous language of the Policy expressly excludes from that definition a private passenger auto "owned by you."

The Policy provides:

*You* and *your* means the named *Insured* shown in the declarations or his or her spouse if a resident of the same household.

Id. GEICO argues that because Medina is listed as a named insured in the declarations, she falls within the definition of "you," and any vehicle owned by her but not insured under the Policy cannot be a temporary substitute vehicle. Lopez contends that "the use of the word 'you' in the policy is limited to the named insured against whom the claim is being made." (Dkt. 25 at 15) In other words, an unscheduled vehicle owned by Montoya would have been excluded from coverage, but Medina's unscheduled vehicle was not excluded from coverage because it was not owned by Montoya.

Lopez acknowledges that Montoya and Medina have shared status as named insureds on the policy. (See Dkt. 25 at 15) She further concedes that if Montoya and Medina were married, Medina would be included in the definition of "you" by virtue of the Policy definition. (See id. at 16) However, she contends that the lack of spousal relationship is significant, and operates to change the interpretation of the word "you." (See id. at 15) Specifically, she asserts that "because [Montoya and Medina] are not married, the definition of 'you,' as applied to Mr. Montoya, encompasses only '*the* named insured.' " (Id. at 16) Furthermore, she contends that because the Policy refers to "the named insured" rather than "any named insured," the term "you" does not apply jointly to both named Insureds listed on the declarations page, but instead applies severally to only the named Insured against whom the claim is made.

In support of her argument, Lopez relies upon a number of cases holding that a policy exclusion that refers to "any named insured" is jointly applicable to all named insureds, whereas a policy exclusion referring to "the named insured" must be applied severally to only the insured against whom the claim was made. See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n., 117 F.3d 1328, 1336 (11th Cir.1998); Michigan Millers Mut. Ins. Corp. v. Benfield, 140 F.3d 915, 925 (11th Cir.1998); Premier Ins. Co. v. Adams, 632 So.2d 1054, 1057 (Fla. 5th DCA 1994); Auto–Owners Ins. Co. v. Eddinger, 366 So.2d 123 (Fla. 2d DCA

---

1. As a factual matter, GEICO disputes whether the Passat was undergoing repair or had already been repaired on the date of the collision. However, GEICO believes this factual dispute is immaterial to the legal determination of whether the Vitara was a temporary substitute auto pursuant to the contractual language of the policy.

1979); and Overton v. Progressive Ins. Co., 585 So.2d 445 (Fla. 4th DCA 1991).

Lopez's reliance upon these cases is misplaced, as those cases apply to a specific factual context that is not present in this case. In each of those cases, the courts were required to determine whether an insured could recover for a loss caused by the fraud or concealment of a coinsured. Those cases established and applied the "innocent insured" doctrine, which states that fraud committed by a coinsured will not void the coverage of an innocent coinsured unless clearly stated in the policy. Benfield, 140 F.3d at 925. In that context, Florida courts have held that the term "*the* insured" is ambiguous and requires a finding of severability. Golden Door Jewelry Creations, Inc., 117 F.3d at 1336. The courts have reasoned that if an insurance policy intends for fraud or dishonesty on the part of one insured to preclude recovery for all insureds, the policy exclusion must use the phrase "any insured" rather than "the insured."

Plaintiff has not cited, and the Court, in its own research, has not disclosed any case in which the "innocent insured" doctrine has been applied outside of a context involving fraudulent conduct by a coinsured. Indeed, the Eleventh Circuit Court of Appeals has acknowledged that those cases are limited to that factual context and thus rejected a plaintiff's reliance upon the severability argument in a liability coverage dispute. In Vitas Healthcare Corp. v. Evanston Ins. Co., 303 Fed.Appx. 856 (11th Cir.2008), an employee of Vitas was injured at the office, which was leased from Northwest Capital Corporation ("NCC"). Vitas was insured through a liability policy with Evanston Insurance Company that excluded coverage for personal injury to "any employee of *the* Insured." Id. at 858. The policy included NCC as an Additional Insured.

After the employee fell, he made a claim against NCC, alleging his injuries were caused by NCC's negligent maintenance of the premises. NCC tendered the claim to Evanston, which denied coverage on the basis that the policy's employee exclusion clause excluded coverage for "any claim based upon or arising out of Personal Injury to any employee of the Insured arising out of and in the course of his employment by the Insured or to any obligation of the Insured to indemnify another because of damages arising out of such injury." Id. at n. 1 (emphasis in original).

Vitas filed an action seeking a declaration that NCC, as an additional insured on the policy, was entitled to coverage for the employee's claim. Vitas acknowledged it was not entitled to coverage for its employee's claim by virtue of the employee exclusion clause, but argued that "the Insured," as used in the clause, should be applied severally to exclude coverage for claims against only the named insured employer and not to any additional insureds.

The district court rejected this argument and granted judgment on the pleadings for Evanston, determining that neither Vitas nor NCC was entitled to coverage. Vitas appealed, arguing that even though the policy lacked a severability clause, "the Insured" should still be read severally. As an initial matter, the court agreed with the district court that "there is no controlling Florida case which holds that, in the absence of a severability clause, an employee exclusion clause should only be applied to the insured employer against whom a claim is asserted, and not to any additional insureds who are not employers of the injured." Id. at 858. The court noted that most cases interpreting insurance exclusionary clauses involved policies that had severability clauses and such cases were

not binding on the facts before the court. Id.

The court then turned to Eddinger, Golden Door Jewelry Creations, Inc., Benfield, and similar cases relied upon by Vitas "for the proposition that Florida courts have unequivocally held that an insurer's use of 'the Insured' in an exclusionary provision requires the exclusion to be applied severally, rather than jointly." Id. The court explained, "[t]hese cases are all distinguishable ... as they involved exclusionary clauses based on concealment or fraud, not employee injuries, and as only the named insureds intentionally committed the fraud to trigger the exclusion. The courts applied the exclusion severally to protect the innocent additional insureds." Id. The Eleventh Circuit thus rejected Vitas's severability argument and affirmed the district court ruling.

A similar argument was also rejected in Lumbermens Mutual Casualty Company v. Falasiri Oriental Rugs, 625 So.2d 1234 (Fla. 2d DCA 1993). In that case, Falasiri and Shah Abbas, two corporations owned equally by two brothers, purchased a single policy from Lumbermens to insure both companies' property and inventory. The total amount of the policy was $610,000, but Lumbermens was not liable for more than $10,000 for any loss to the companies' property "while in transit in any vehicle owned, leased, or operated by the Insured." Id. at 1235 (emphasis added). While transporting some rugs in a truck rented by an employee of Shah Abbas, the brothers left the truck unattended in a parking lot and the rugs were stolen.

Both Falasiri and Shah Abbas made claims under the policy and Lumbermens paid a total of $10,000. Shah Abbas agreed that the claims were properly limited to that amount. Falasiri, however, argued that it should be permitted to recover its loss up to the full policy limits of $610,000 because "the Insured," as used in the poli-

cy, required separate performances to Shah Abbas and Falasiri. Falasiri relied upon Eddinger and Overton in making its argument. The Second District Court of Appeal rejected Falasiri's argument and explained:

> These cases have no application to the instant case. Eddinger and Overton and their predecessors and progeny deal with variations of the following factual scenario: A husband and wife jointly owned property and were coinsureds under a policy covering the property; the husband intentionally and fraudulently committed arson to the property without the wife's involvement or foreknowledge; the husband and wife made a joint claim on their insurance policy; and the insurance company denied the claim on the basis that arson by one of the insureds voided the coverage under the policy. Courts facing that situation have held that the responsibility for the fraud, i.e., the arson, is several and separate and that the husband's fraud cannot be attributed or imputed to the wife; thus, the fraud of the husband does not void the policy as to the wife. Such a scenario is not relevant to this case. This case does not involve a joint property interest, attribution of fraud or wrongdoing by one of the insureds, or an "innocent" insured. Rather it involves two brothers who mutually own two companies who chose to purchase jointly a single policy of business insurance.

Id. at 1235–36.

As Vitas Healthcare and Lumbermens' demonstrate, the "innocent insured" doctrine simply is not applicable to cases that do not involve fraudulent conduct. See also All Children's Hospital v. Medical Sav. Ins. Co, 2005 WL 1863409 (M.D.Fla. Aug. 3, 2005) (refusing to apply the doctrine to a case involving rescission of a family health insurance policy due to the wife's misstate-

ments about her medical history in the application process, and noting "that the doctrine specifically applies to fraud in connection with property loss claims, not to misrepresentation in health insurance applications.").

Here too, the Court finds the "innocent insured" cases are inapposite to the facts of this case. This case does not involve property loss caused by the fraud of one of the co-insureds. Instead, it concerns the wholly different question of whether an insured is entitled to coverage when driving a non-scheduled vehicle owned by a coinsured. The relevant case law persuades the Court that the answer is no.

In Boyd v. United States Fidelity & Guaranty Company, 256 So.2d 1 (Fla.1971), Bess Boyd sustained injuries when she was struck by a vehicle owned by Amelia Bowman but driven by her husband, Charles. Charles and Amelia owned separate vehicles that carried separate insurance policies. Both of their cars were operable at the time of the accident, but the Bowmans had chosen to drive Amelia's car to Florida for vacation. Charles's insurer, United States Fidelity & Guaranty Company ("U.S.F. & G."), denied coverage for the accident and did not participate in Boyd's lawsuit against the Bowmans. After Byrd and the Bowmans stipulated to entry of a judgment, Amelia's insurer paid the extent of the policy limits to Boyd. Boyd then filed a garnishment action against U.S.F. & G., seeking to obtain the unsatisfied amount of her judgment against the Bowmans.

A case originating in the district court for the United States District Court for the Southern District of Florida held that Charles's insurance policy did not provide coverage for the accident. Boyd appealed to the former Fifth Circuit Court of Appeals, which certified to the Florida Supreme Court the following question: "Whether, under the law of Florida, the subject family automobile insurance policy provides or excludes liability coverage for the specifically named insured husband while he is operating an unscheduled automobile owned by his resident-in-household spouse and insured by another carrier for a lesser amount." Id. at 3.

The contractual language of the U.S.F. & G. policy, which is substantially similar to the language of Policy at issue in this case, provided as follows:

Persons Insured

The following are Insureds under Part I:

 (a) with respect to the owned automobile,

 (1) the Named Insured and any resident of the same household,

 (2) any other person using such automobile with the permission of the Named Insured.

 . . .

Definitions

Under Part I:

"Named Insured" means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;

"Insured" means a person . . . described under "Persons Insured";

. . .

"owned automobile" means

 (a) a private passenger . . . automobile described in this policy for which a specific premium charge indicates that coverage is afforded.

 . . .

 (d) a temporary substitute automobile; "temporary substitute automobile" means any automobile or trailer, not owned by the Named Insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from

normal use because of its break-down, repair, servicing, loss or destruction;

"non-owned automobile" means an automobile or trailer, not owned by or furnished for the regular use of either the Named Insured or any relative, other than a temporary substitute automobile.

Id. at 2–3.

The Florida Supreme Court first noted that Amelia's automobile was not an "owned automobile" as described in the policy because the Bowman's had not paid any coverage premiums for it. The court found her car also did not qualify as a "non-owned automobile" within the policy definition because, as Charles's spouse residing in the same household with him, Amelia also was a named insured under the policy, thus violating the "non-owner-ship" requirement of a "non-owned automobile." [2]

The court found there was no ambiguity in the policy and explained "the rationale behind inclusion of a 'drive other cars' or 'non-owned automobile' provision in an automobile insurance policy" as follows:

The purpose of the 'drive other cars' provision in an automobile liability policy is to cover occasional or incidental use of other cars without a corresponding increase in the premium. The policy is not intended to cover the insured against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to use. More specifically, the evident intention of the limitation with respect to other automobiles is to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured.

Id. at 5 (quoting 13 Couch on Insurance 2d § 45:1052, p. 68 (1965)).

In Fidelity and Casualty Company of New York v. Fonseca, 358 So.2d 569 (Fla. 3d DCA 1978), the court was faced with the similar question of whether Ada Rojas was entitled to personal injury protection or liability coverage under her insurance policy for an accident that occurred when she was driving her husband's car. Fidelity Casualty Company of New York insured Rojas' car, a 1966 Ford Fairlane that was the only vehicle listed on the policy's declaration sheet. On the date of the accident, her Ford was being repaired, so she borrowed her husband's car, which was not scheduled as an insured vehicle and for which the Rojases had paid no premiums. The policy provided the following, with respect to liability coverage:

The company agreed to pay, on behalf of the insured, all sums which the insured became legally obligated to pay as damages because of bodily injury to any person "arising out of the ownership, maintenance, or use of the owned automobile or any non-owned automobile...."

---

2. In dictum, the Court also stated that Amelia's car was not a "temporary substitute automobile" because Charles's car was in working order while they were using her car. In Fidelity and Casualty Company of New York v. Fonseca, 358 So.2d 569 (Fla. 3d DCA 1978), the Third District Court of Appeal cautioned that the Supreme Court's statement should not be used to infer that if Charles's car had been out of service, Amelia's car could have qualified as a temporary substitute automobile within the policy definition, relying on Boyd's rationale about the "drive other cars" exclusion at issue. That rationale "make[s] it clear that under the provisions of a policy which defines a temporary substitute automobile as one not owned by the named insured, and defines a named insured to include a resident spouse, a car owned by one resident spouse cannot qualify as a temporary substitute vehicle for the other spouse." 358 So.2d at 574, n. 3.

An "owned" automobile was defined as "a private passenger ... automobile described in this policy for which a specific premium charge indicates that coverage is afforded, ..."

A "non-owned" automobile meant one "not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile."

A "temporary substitute automobile" was defined as any automobile "not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile ... when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." The term "named insured" was defined as "the individual named in item 1 of the declarations and also ... his spouse, if a resident of the same household."

Id. at 571. Notably, the policy also contained a severability of interests clause, which stated, "The insurance afforded under Part I (Liability) applies separately to each insured against whom claim is made or suit is brought, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability." Id.

Fidelity argued that the language of the policy was unambiguous and that Boyd should control the disposition of the case. Rojas and Fonseca argued that the husband's car qualified as a temporary substitute automobile and Boyd was inapposite because it did not deal with the applicability of a severability of interests clause like the one in the Fidelity policy. The Third District Court of Appeal found Boyd almost directly on point, noting with approval the Florida Supreme Court's rationale that members of a single household should not be permitted to secure coverage on a vehicle they have the option to use frequently if they have chosen not to insure

that particular automobile. Id. at 572. For that reason, the court held that the severability clause in the Rojas's policy was not applicable to the facts of the case because one named insured could not be severed from another named insured. Id. at 573. The court explained that to allow "a severance within an integrated class ... would be the circumvention of the plain language of the insurance contract under review." Id.

Finally, in Dixie Insurance Company v. Beaudette, 474 So. 2d 1264 (Fla. 5th DCA 1985), the Fifth District Court of Appeal held that a car driven by an insured at the time of an accident was not covered under her insurance policy because it was owned by her spouse and not shown in the declarations page of her policy. Heather Madden was insured under automobile insurance policy with Dixie Insurance Company. During the policy period, she got married. At the time of the accident, she was driving her husband's car, which was titled solely in his name. Madden sought liability coverage from Dixie, claiming that her husband's car was a "covered auto" under the terms of her policy. The policy described a "covered auto" as "any vehicle shown in the Declarations" or "any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its breakdown, repair, servicing, loss or destruction." Id. at 1265. The policy defined "you" and "your" as referring to the named insured shown in the Declarations and his or her spouse if residing in the same household.

The court thus determined that Madden's husband was encompassed within the policy's meaning of "you." Therefore, "[t]he temporary or substitute vehicle clause clearly excluded coverage under this policy for an accident occurring while the insured or a spouse drove an automo-

bile <u>owned by either of them</u>, which was not shown on the declaration page." <u>Id.</u> (emphasis added).

 The Court finds <u>Boyd</u>, <u>Fonseca</u>, and <u>Dixie</u> instructive in this case. As in those cases, the Court finds that the policy provisions at issue in this case are unambiguous. "An insurance contract is ambiguous if it is susceptible to two or more <u>reasonable</u> interpretations that can fairly be made." <u>Dahl–Eimers</u>, 986 F.2d at 1381 (emphasis added). The Court finds the interpretation urged by Lopez is unreasonable.

 The policy clearly provides that named insureds fall within the definition of "you" and that any vehicle "owned by you" but not listed on the declarations page is not a temporary substitute auto. The Court rejects Lopez's argument that Medina would be encompassed within the definition of "you" if she were married to Montoya, but is not encompassed within that definition as a fellow named Insured. To read the policy in such a manner would fail to give effect to its purpose and would allow Montoya and Medina to obtain coverage they affirmatively chose not to maintain. Having chosen to drop the Vitara from the Policy, they are not entitled to have that vehicle treated as if it remained on the declarations page.

Accordingly, the Court concludes that the Vitara was not a temporary substitute auto within the meaning of the Policy, and the Policy did not provide coverage for the April 22, 2014 collision.

Based on the foregoing, it is hereby **ORDERED** as follows:

1. Defendant's Motion for Final Summary Judgment (Dkt. 24) is **GRANTED.**
2. Plaintiff's Motion for Summary Judgment as to Count I (Dkt. 25) is **DENIED.**
3. The Clerk is **DIRECTED** to enter judgment in favor of Defendant.

4. The Clerk is directed to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 22nd day of July, 2016.