MANAGEMENT SPECIALISTS, INC., Plaintiff–Appellant,

v.

NORTHFIELD INSURANCE COMPANY, Defendant–Appellee.

No. 03CA1730.

Colorado Court of Appeals.
Division II.

Oct. 21, 2004.

**34**

Jeff Detlefs, P.C., Jeff Detlefs, Lakewood, Colorado, for Plaintiff–Appellant.

Montgomery Kolodny Amatuzio & Dusbabek, LLP, David C. Fawley, Denver, Colorado, for Defendant–Appellee.

CASEBOLT, J.

In this declaratory judgment action concerning insurance coverage, plaintiff, Management Specialists, Inc. (MSI), appeals the summary judgment in favor of defendant, Northfield Insurance Company (Northfield), in which the trial court determined that MSI was not entitled to a defense or coverage by Northfield in two underlying lawsuits.  MSI

also appeals the award to Northfield of costs for its expert witness. We affirm.

MSI is a real estate property management company whose principal clients are homeowners associations. Under its standard contract with clients, MSI acts as a managing agent and is sometimes required to obtain liability insurance for the homeowners associations, including directors and officers liability coverage. The standard contract also requires MSI to carry its own general liability, workers' compensation, employee dishonesty, and errors and omissions insurance.

At all times relevant to this action, MSI had an errors and omissions liability policy in effect issued by Northfield, covering negligent acts, errors, or omissions in MSI's performance of professional services. As pertinent here, the policy contained an exclusion stating that the policy did not apply to "[a]ny damages arising out of the failure or inability to maintain adequate levels or types of insurance."

Two MSI clients, Encore and Sixth Avenue, initiated actions against MSI. Encore alleged that MSI failed to purchase directors and officers liability coverage for Encore as required by the parties' contract. MSI sought defense of that suit from Northfield, but Northfield refused to provide a defense or indemnification.

Sixth Avenue sought damages for misrepresentation, breach of fiduciary duty, and breach of contract, asserting that MSI made late premium payments to Sixth Avenue's insurance carrier and ultimately allowed its liability coverage to lapse. MSI sought defense of that action from Northfield, which retained defense counsel and began defending MSI in the litigation. Northfield did not, however, issue a reservation of its rights under the policy.

Approximately five months later, following MSI's commencement of this declaratory judgment action against Northfield seeking defense and indemnification in the Encore litigation, Northfield withdrew its defense in the Sixth Avenue case, asserting that all the claims in that lawsuit were excluded by the quoted policy exclusion. Thereafter, MSI amended its complaint to seek a declaration that it was entitled to a defense and indemnification in both cases under its policy with Northfield. It also asserted a claim for bad faith breach of the insurance contract.

The parties filed cross-motions for summary judgment. Finding that the quoted exclusion unambiguously excluded coverage and negated the duty to defend for the two underlying suits, the trial court granted summary judgment in favor of Northfield and awarded costs. This appeal followed.

I.

MSI contends that the trial court erred in granting summary judgment in favor of Northfield. Specifically, MSI asserts that the policy exclusion is ambiguous because it is susceptible of different meanings. It argues that the exclusion refers to damages arising out of MSI's failure to maintain insurance coverage for itself and that, so interpreted, the policy does not exclude coverage for the two claims. We disagree.

The interpretation of an insurance contract presents a question of law that we review de novo. *Union Ins. Co. v. Houtz,* 883 P.2d 1057 (Colo.1994).

Under well-settled principles of contract interpretation, the words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided. *Allstate Ins. Co. v. Huizar,* 52 P.3d 816 (Colo.2002); *Allstate Ins. Co. v. Starke,* 797 P.2d 14 (Colo. 1990). Accordingly, we construe the terms of an insurance policy as a person of ordinary intelligence would understand them. *State Farm Mut. Auto. Ins. Co. v. Nissen,* 851 P.2d 165 (Colo.1993).

Unless there is an ambiguity in the policy language, the policy must be enforced as written. *Jones v. USAA Cas. Ins. Co.,* 952 P.2d 819 (Colo.App.1997). In determining whether there is an ambiguity in a policy provision, we evaluate the policy as a whole and construe the language in harmony with the plain meaning of the words employed. A mere disagreement between the parties regarding the meaning of a policy term does not create an ambiguity. *State Farm Mut.*

*Auto. Ins. Co. v. Stein,* 940 P.2d 384 (Colo. 1997).

If an ambiguity exists, the policy language must be construed against the drafter of the document and in favor of providing coverage to the insured. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294 (Colo.2003).

An insurer must draft exclusionary clauses in clear and specific language. To benefit from an exclusionary clause, an insurer must establish that the exclusion applies and is not subject to any other reasonable interpretation. *Prudential Prop. & Cas. Ins. Co. v. LaRose,* 919 P.2d 915 (Colo.App.1996).

Here, viewing the exclusion in the context of the entire policy, we perceive no ambiguity. The policy provides coverage for MSI's negligent acts, errors, or omissions in its performance of professional services, but excludes coverage for damages arising out of its failure or inability to maintain adequate levels or types of insurance as part of those services. The exclusion means simply that MSI's failure to maintain insurance of *any* kind, whether for itself or for others, is excluded from coverage. The exclusion does not differentiate between types of insurance or for whom the insurance is maintained.

Contrary to MSI's assertion, the fact that the exclusion does not distinguish between different types of insurance or for whom it is maintained does not render it ambiguous. MSI essentially confuses what the exclusion *means* with what the provision *includes.* The exclusion means failure to maintain insurance—any kind or type of insurance whatsoever. It includes multiple situations in which MSI fails to do so.

Nevertheless, MSI asserts that because its supplemental application specifically mentioned certain activities that were excluded from coverage, but did not specifically mention obtaining insurance for others, the parties did not intend to exclude it from coverage. We reject that argument.

The supplemental application asked numerous questions about MSI's professional activities. Following some of the questions is a disclaimer, informing the applicant that some activities are or might be excluded and advising the applicant to read the policy carefully upon its issuance. However, the absence of a specific disclaimer in the application following a question regarding maintaining insurance for clients does not alter the meaning of the exclusion. Both the application and the policy clearly advise the insured to read the entire policy because some activities may be excluded. Accordingly, we reject this contention.

## II.

MSI nevertheless contends that, with regard to the Encore litigation, the exclusion does not apply because the claimed error is a failure to procure insurance, not a failure to maintain it. We disagree.

The terms "failure" and "maintain" are not defined in the policy. Hence, we accord the terms their ordinary meaning. *See Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814 (Colo.2004).

The term "failure" generally means deficiency or want of success. *See Webster's Third New International Dictionary* 815 (1976). The term "maintain" generally means to keep or keep up, carry on, continue or persevere in, or support or provide for. *See Webster's Third New International Dictionary* 1362 (1976).

Applying those definitions here, we conclude that MSI did not succeed in providing insurance coverage for Encore. Therefore it failed to maintain insurance within the meaning of the policy.

Further, MSI's supplemental application, which is stated to be a part of the policy, contained a question about whether MSI "maintained insurance for its clients." MSI answered by indicating that it "solicit[s] insurance proposals" and pays premiums for its clients. This answer indicates that MSI understood the term "maintain" to include actions in procuring or providing insurance in the first instance.

For these reasons, we conclude that the language of the exclusion includes MSI's actions in failing to obtain insurance for En-

core. Accordingly, we reject MSI's contention.

### III.

■ Regarding the Sixth Avenue litigation, MSI contends that because the exclusion applies to "any damages arising out of the failure ... to maintain insurance," and several of the underlying claims are for misrepresentation and fraud, which arose prior to the actual lapse of insurance, the exclusion does not apply to all the claims in that litigation. We disagree.

■ When an insurer refuses to defend its insured, the determination of the insurer's duty to defend is based solely on factual allegations contained in the underlying complaint. *See Cotter Corp. v. Am. Empire Surplus Lines Ins. Co., supra.* If those allegations potentially come within policy coverage, or if there is even some doubt, the insurer must defend the claim. The insurer must defend against all claims if some potentially covered claims are alleged. *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083 (Colo.1991). However, when the complaint alleges multiple claims, an insurer has no duty to defend if it can establish that the factual allegations in the underlying complaint reveal a situation that is solely and entirely within the policy's exclusions. *Cotter Corp. v. Am. Surplus Lines Ins. Co., supra; Colo. Farm Bureau Mut. Ins. Co. v. Snowbarger,* 934 P.2d 909 (Colo.App.1997).

Here, Sixth Avenue asserted multiple claims, including misrepresentation and fraud stemming from MSI's actions in failing to disclose that it was late in paying premiums to Sixth Avenue's insurance carrier, which ultimately resulted in a lapse of coverage. Because the acts giving rise to those claims arguably occurred before the actual termination of the insurance, MSI argues that those claims cannot be excluded because they do not "aris[e] out of the failure ... to maintain ... insurance coverage." We reject this argument.

■ The term "arising out of" means originating from, growing out of, or flowing from. In the context of whether a particular loss comes within policy coverage, "arising

out of" has been construed to create a "but for" test. *See Northern Ins. Co. v. Ekstrom,* 784 P.2d 320 (Colo.1989).

Here, the lapse of Sixth Avenue's insurance was the impetus for the lawsuit against MSI. Therefore, although the fraud or misrepresentation may have occurred before the actual lapse of coverage, if the coverage had not lapsed, Sixth Avenue's entire claim against MSI would not have arisen. Accordingly, we conclude that all the claims alleged in the Sixth Avenue litigation arose from MSI's failure to maintain Sixth Avenue's insurance and are therefore excluded from coverage under the Northfield policy.

### IV.

MSI contends that, with regard to the Sixth Avenue claim, Northfield should be estopped from denying coverage because it provided a defense for MSI for five months without a reservation of rights. It also asserts that factual issues related to whether estoppel is applicable preclude summary judgment. We disagree.

■ In general, the doctrines of waiver and estoppel cannot create coverage where none exists under the policy. *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606 (Colo.1999); *Empire Cas. Co. v. St. Paul Fire & Marine Ins. Co.,* 764 P.2d 1191, 1198 (Colo.1988). However, if an insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured without disclaiming liability and giving notice of its reservation of rights, it may thereafter be precluded from claiming noncoverage when its conduct has prejudiced the insured. *See* 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* §§ 202:54 & 202:55 (3d ed.1999).

There are no Colorado cases expressly applying this principle. However, in *Gulf Insurance Co. v. State,* 43 Colo.App. 360, 607 P.2d 1016 (1979), a division of this court discussed the application of waiver and estoppel in a similar situation. The division noted that, to establish estoppel, an insured must have relied to its detriment upon the insurance company's defense of the suit. It

stated, however, that no presumption of prejudice arises where the insurer disclaims coverage prior to trial.

Similarly, the United States District Court for the District of Colorado has recognized that waiver or estoppel may bar an insurer from asserting noncoverage in certain circumstances. *See Lextron, Inc. v. Travelers Cas. & Sur. Co.,* 267 F.Supp.2d 1041 (D.Colo.2003)(insurer's brief assumption of defense in action against its insured, without notifying insured in writing of its reservation of rights, did not bar, on estoppel grounds, insurer's later assertion of defense of noncoverage where insured did not prove prejudice from the assumption of defense because insurer notified insured of intention to withdraw approximately two months after assuming defense and less than four months after underlying litigation commenced); *Bd. of County Comm'rs v. Guar. Ins. Co.,* 90 F.R.D. 405 (D.Colo.1981)(applying Colorado law, court held that, where the insurer gives timely notice of its disclaimer and the grounds therefor, there is no presumption of prejudice, and the insured must carry its burden of showing reliance to its detriment before estoppel can bar a defense of noncoverage; mere delay in making a disclaimer is not enough).

Courts of several other states apply estoppel to bar an insurer from asserting noncoverage when the insurer assumes the defense without a reservation of rights and the insured proves some prejudice from the insurer's actions. In *Geico General Insurance Co. v. Hanzlik,* 32 Kan.App.2d 951, 92 P.3d 1121 (2004), the court quoted the general rule that if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded from setting up such ground for forfeiture or noncoverage.

Likewise, in *State Farm Lloyds, Inc. v. Williams,* 791 S.W.2d 542 (Tex.Ct.App.1990), the court stated that if an insurer assumes an insured's defense without obtaining a reservation of rights, the insurer may be estopped from denying coverage. It held that cover-

age by estoppel applies if three elements are established: (1) the insurer had sufficient knowledge of the facts or circumstances indicating noncoverage; (2) in spite of this knowledge, the insurer assumed the defense of the insured without obtaining an effective reservation of rights; and (3) the insured suffered harm as a result of the insurer's assumption of the insured's defense. *See also Prescott's Altama Datsun, Inc. v. Monarch Ins. Co.,* 253 Ga. 317, 319 S.E.2d 445 (1984)(risks not covered by the terms of an insurance policy, or risks excluded therefrom, while normally not subject to the doctrine of waiver and estoppel, may be subject to the doctrine where the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage).

■ We agree with the rationale of these authorities. Accordingly, we hold that Northfield would be estopped to deny coverage if MSI relied on Northfield's defense to its detriment and was prejudiced thereby. *See First Nat'l Bank v. Ulibarri,* 38 Colo. App. 428, 557 P.2d 1221 (1976); *cf. Clementi v. Nationwide Mut. Fire Ins. Co.,* 16 P.3d 223 (Colo.2001)(holding that an insurer can deny benefits based on late notice by the insured only when the insurer is prejudiced by the delay). *See generally* 14 Russ, *supra,* §§ 202:54 & 202:55.

■ Here, however, while Northfield undertook the defense of the Sixth Avenue litigation in April 2002 without a reservation of rights and withdrew that defense in October 2002, there are no facts that show MSI was prejudiced by Northfield's brief assumption of the defense. Therefore, even assuming, without deciding, that MSI relied to its detriment upon Northfield's conduct, we conclude that summary judgment in favor of Northfield on this issue was appropriate because there was no showing of prejudice. *See Gulf Ins. Co. v. State, supra* (prejudice cannot be presumed when insurer withdraws defense prior to trial).

### V.

■ MSI contends that the trial court erred in awarding Northfield its expert witness fees because the witness was merely

advisory, he was never deposed, and he did not testify. We disagree.

A prevailing party may recover the reasonable and necessary costs incurred in the course of litigation. *See* § 13–16–105, C.R.S. 2004; *Mackall v. Jalisco Int'l, Inc.*, 28 P.3d 975 (Colo.App.2001).

The award of expert witness fees is within the trial court's discretion. *Leadville Water Co. v. Parkville Water Dist.*, 164 Colo. 362, 436 P.2d 659 (1967); *Van Schaack v. Van Schaack Holdings, Ltd.*, 856 P.2d 15 (Colo.App.1992), *aff'd*, 867 P.2d 892 (Colo. 1994). Generally, discretionary rulings concerning costs will not be reversed on appeal absent an abuse of discretion. *Ballow v. PHICO Ins. Co.*, 878 P.2d 672 (Colo.1994).

A trial court's discretion to award costs is not restricted to witnesses who testify at trial. Rather, the trial court has broad discretion to determine the costs reasonably necessary for trial preparation. *See Wark v. McClellan*, 68 P.3d 574 (Colo.App.2003); *Bainbridge, Inc. v. Douglas County Bd. of Comm'rs*, 55 P.3d 271 (Colo.App.2002)(trial court may award costs, if reasonable, to prevailing party for expert witness who does not testify).

Here, although the case was decided on cross-motions for summary judgment and the witness never testified, the record discloses that his testimony, as an expert in the insurance industry, would have been useful had the issue gone to trial. Indeed, MSI asserted a claim for bad faith breach of the insurance contract, and this witness would have been qualified to opine on the reasonableness of Northfield's conduct. Accordingly, we perceive no abuse of discretion in the trial court's decision to award expert witness fees for this witness.

The judgment is affirmed.

Judge CARPARELLI and Judge NEY* concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and