**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 22, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EVANSTON INSURANCE
COMPANY,

   Plaintiff-Appellee,

v.

LAW OFFICE OF MICHAEL P.
MEDVED, P.C.; MICHAEL P.
MEDVED,

   Defendants-Appellants.

No. 16-1464

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:14-CV-02905-NYW)**
_____

Damian J. Arguello, Colorado Insurance Law Center, Westminster,
Colorado (Bradley A. Levin, Levin Sitcoff PC, Denver, Colorado, with him
on the briefs), for Defendants-Appellants.

M. Courtney Koger, Kutak Rock LLP, Kansas City, Missouri (Elayna Fiene
and Linda J. Knight, Wilson Elser Moskowitz Edelman & Dicker, Denver
Colorado, on the brief), for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **BACHARACH**, and **MORITZ**,
Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This appeal involves the extent of a duty to defend under a "professional services" policy of liability insurance issued to a law firm (The Law Office of Michael P. Medved, P.C.). The extent of this duty came into play when the law firm was confronted with allegations of overbilling. The insurer (Evanston Insurance Company) defended the law firm under a reservation of rights but ultimately concluded that the allegations of overbilling fell outside the law firm's coverage for professional services. The law firm disagrees with this conclusion; the district court agreed with the insurer, and we do too.

**1.     The Medved firm faced allegations of overbilling.**

Mr. Michael Medved is a Colorado attorney who has handled foreclosures. When foreclosing on properties, he billed his attorney fees and costs to his firm's clients, which were lenders and investors. Ultimately, however, the attorney fees and costs were passed on to the property owners (or buyers, if the property was resold).

In 2012, the Colorado Attorney General began investigating Mr. Medved and other foreclosure attorneys, questioning whether they had overbilled. When the investigation became public, a group of property owners brought a class action against Mr. Medved and his law firm for overbilling.

**2.    Mr. Medved submitted a claim under his liability policy.**

At the time, the Medved firm had a liability policy with Evanston that covered professional services. Based on this policy, Mr. Medved informed Evanston that he and his firm had been sued in a class action, and Evanston assumed defense of the suit "subject to a reservation of rights." Appellants' App'x at 319. But Evanston waited roughly ten more months to explain why it was reserving its rights to contest coverage. With this eventual explanation, Evanston continued to defend Mr. Medved and his firm until they settled with the property owners.

While the class action was being litigated, Mr. Medved periodically updated Evanston on the Colorado Attorney General's investigation. These updates informed Evanston that the Colorado Attorney General had twice subpoenaed Mr. Medved. Aware of the subpoenas, Evanston declined to decide whether a potential suit by the Colorado Attorney General would be covered, viewing such a decision as premature until Mr. Medved received a complaint.

The investigation culminated with the Colorado Attorney General's initiation of a suit against Mr. Medved and his firm. Following the provision of a draft complaint, Evanston agreed to defend under a reservation of rights. But Mr. Medved settled with the Colorado Attorney General for $1 million, obviating any need for a defense.

3

### 3.    Evanston obtained summary judgment.

Evanston sued Mr. Medved and his firm for

- declaratory relief, stating that the Medved firm's professional-services policy did not cover either the class action or the Colorado Attorney General's investigation and

- reimbursement of attorney fees and costs incurred in defending the class action.

Mr. Medved and his firm filed counterclaims against Evanston for breach of the insurance contract and bad faith.

Evanston moved for summary judgment on all claims and counterclaims. The district court granted the motion, concluding that

- Evanston had no duty to defend the class action because the allegations had pertained only to billing practices, which were not "professional services,"

- Evanston was not estopped from asserting coverage defenses for the class action because estoppel cannot create insurance coverage,

- Evanston had no duty to defend the Colorado Attorney General's investigation because (1) no "claim" could arise until Mr. Medved or his firm had received a written demand for monetary damages and (2) the allegations had pertained only to billing practices,

- Mr. Medved and his firm's counterclaims for bad faith failed because there was no coverage under the policy, and

- Evanston was entitled to reimbursement of defense fees and costs.

Mr. Medved and his firm appeal, arguing that the district court erred on four issues:

1.      Did the class action and Colorado Attorney General's investigation arise from alleged wrongful acts or omissions in the performance of "professional services"?

2.      Had Evanston incurred a duty to defend against the Colorado Attorney General's investigation before Mr. Medved received a draft complaint?

3.      Was Evanston estopped from asserting coverage defenses for the class action?

4.      Would Mr. Medved and his firm's bad-faith counterclaims fail as a matter of law if there was no coverage under the policy?

**4.      Standard of Review**

We review de novo the district court's grant of summary judgment. *Dullmaier v. Xanterra Parks & Resorts*, 883 F.3d 1278, 1283 (10th Cir. 2018). Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and the party moving for summary judgment is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We consider the availability of summary judgment against the backdrop of the forum state's substantive law. *See Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). Because the suit was filed in the District of Colorado, we apply Colorado's substantive law. If the Colorado Supreme Court has not decided an issue, "our task is to predict how it would rule." *United States v. Badger*, 818 F.3d 563, 568 (10th Cir. 2016).

5

**5.     Evanston had no duty to defend Mr. Medved or his firm.**

Mr. Medved and his firm argue that the policy required Evanston to defend against the class action and the Colorado Attorney General's investigation. We disagree. The policy did not create a duty to defend because the allegations had arisen from billing practices, not professional services.

**A.     Focus on the Claimants' Allegations**

"An insurer's duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy." *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991) (en banc). To determine whether Evanston had a duty to defend, we consider whether the property owners and Colorado Attorney General "state[d] a claim which [was] potentially or arguably within the policy coverage." *Id.* (quoting *City of Willoughby Hills v. Cincinnati Ins. Co.*, 458 N.E.2d 555, 558 (Ohio 1984)). If so, the insurer incurred a duty to defend Mr. Medved and his firm. *See id.*

**B.     The Policy Language and Allegations of Overbilling**

The policy covered damages arising from a claim only if it pertained to "Professional Services." Appellants' App'x at 95. "Professional Services" are defined as "those services performed by the 'Insured' for others . . . as a lawyer . . . ." *Id.* at 97–98. The district court determined

6

that the policy definition of "Professional Services" had not covered the allegations of overbilling. We agree.

We considered a similar issue in *Zurich American Insurance Co. v. O'Hara Regional Center for Rehabilitation*, 529 F.3d 916 (10th Cir. 2008). There we applied Colorado law and held that a medical provider's billing practices did not fall within an insurance policy's coverage for professional services. *O'Hara*, 529 F.3d at 920, 924–26; *see also Cohen v. Empire Cas. Co.*, 771 P.2d 29, 31 (Colo. App. 1989) (holding that an attorney's failure to pay business expenses does not fall within an insurance policy's coverage for professional services).

Mr. Medved and his firm argue that the allegations involved not only billing practices but also "an integral part of [the Medved firm's] Professional Services to lender clients to enforce their contractual right of recovery." Appellants' Opening Br. at 27. For this argument, Mr. Medved and his firm point to the rights of lenders and investors to obtain reimbursement for what they had paid the Medved firm. According to Mr. Medved and his firm, their billings provided lenders and investors with the documentation required for reimbursement.

Mr. Medved and his firm forfeited this argument by failing to raise it in district court. *See Ave. Capital Mgmt. II, L.P. v. Schaden*, 843 F.3d 876, 884–85 (10th Cir. 2016). We have discretion to consider forfeited arguments under the plain-error standard; but Mr. Medved and his firm

have not requested plain-error review, which "surely marks the end of the road" for the new argument. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011).

Even if we were to consider the new argument, it would fail as a matter of law. In the class action and Colorado Attorney General's investigation, the alleged "wrongful act" consisted only of billing too much; there were no allegations that the Medved firm had impaired the rights of lenders and investors to reimbursement. Consequently, the allegations arose solely from billing practices, which are not "professional services."

Mr. Medved stated under oath that all of the claims in the class action related to overbilling:

> Q.     . . . . Irrespective of the title of the cause of action, is it your understanding that [the claims in the class-action] all relate to this same alleged overbilling practice?
>
> A.     Yeah. Practices, I guess. Yeah.
>
> Q.     There weren't other allegations of something you might have done improperly?
>
> A.     No. They're all related to charges.

Appellants' App'x at 264; *see also id.* at 231–32 (Mr. Medved's testimony that "overall their allegation [in the class action] was is [sic] that we overcharged for fees"); *id.* at 222–23 (Mr. Medved's testimony that "[a]ll that [the plaintiffs in the class action] complained about was the amount

8

that we were charging"). Similarly, Mr. Medved acknowledged under oath that the Colorado Attorney General's allegations involved "overcharging." *Id.* at 252; *see also id.* at 236 (Mr. Medved acknowledging that the Colorado Attorney General's allegations involved "an overbilling issue").

## C. The Effect of the Policy Phrase "By Reason Of"

Mr. Medved and his firm also argue that the insurance policy broadened coverage to include billing practices by using the phrase "by reason of," which required only "basic, direct causation and nothing more." Appellants' Opening Br. at 28. But even if this interpretation were correct, the policy would not have covered the overbilling allegations.

The policy covered any damages incurred "as a result of a '*Claim*' . . . *by reason of* a '*Wrongful Act*' in the performance of or failure to perform 'Professional Services' by the 'Insured.'" Appellants' App'x at 95 (emphasis added). The phrase "by reason of" connects the "Claim" to the "Wrongful Act." But coverage was absent because

- the alleged wrongful act (overbilling) lacked the required connection to professional services rather than the claim itself, and

- the "by reason of" phrase does not create a connection between the wrongful act and the professional services.

Therefore, it does not matter how a court interprets the phrase "by reason of." However this phrase is interpreted, the claims in the class action and

9

Colorado Attorney General's investigation would have related only to billing practices, which are not professional services.

Mr. Medved and his firm downplay the lack of a connection between the claims and professional services, treating the phrase "by reason of" as the equivalent of the phrase "arising out of." Under this approach, the overbilling claims arose out of the professional service of documenting the fees and costs for foreclosure.

This approach was rejected in *Cohen v. Empire Casualty Co.*, 771 P.2d 29 (Colo. App. 1989). There an insurance policy covered claims "'arising out of'" an attorney's professional services. *Cohen*, 771 P.2d at 30 (quoting the insurance policy). Interpreting the policy, the Colorado Court of Appeals held that a claim involving a failure to pay the fees of another attorney had not arisen out of professional services. *Id.* at 31. For this holding, the court reasoned that an attorney's expenses are incidental to the attorney's "*business*" and do not involve "legal advice or assistance to others *in his professional capacity as a lawyer*." *Id.* (emphasis in original).

*Cohen* was issued by the state's intermediate appellate court rather than the state's highest court. But when we apply state law, we follow the opinions of an intermediate state appellate court unless "'convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Dullmaier v. Xanterra Parks & Resorts*, 883 F.3d 1278, 1283–

10

84 (10th Cir. 2018) (quoting *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007)).

We would expect the Colorado Supreme Court to follow the approach set out in *Cohen*. Under this approach, the claims against Mr. Medved and his firm arose out of their billing practices, not their professional services. The policy therefore did not cover either the class action or the Colorado Attorney General's investigation, and Evanston had no duty to defend in either of these matters.[1]

**6.    Evanston is not estopped from denying a duty to defend.**

Mr. Medved and his firm also contend that Evanston's failure to make an effective reservation of rights estopped Evanston from asserting coverage defenses for the class action. We reject this contention based on the absence of prejudice.

---

[1]    Mr. Medved and his firm make two other arguments relating to the Colorado Attorney General's investigation:

1.    The district court erred in concluding that Evanston had not incurred a duty to defend before Mr. Medved received the draft complaint.

2.    The district court also erred because the Colorado Attorney General's investigation and the class action had been intertwined.

We need not address these arguments because the insurance policy did not otherwise cover either the investigation or the class action. Accordingly, Evanston had no duty to defend in either matter.

11

An insurer must raise or reserve "all defenses within a reasonable time after learning of such defenses, or those defenses may be deemed waived or the insurer may be estopped from raising them." *U.S. Fidelity & Guar. Co. v. Budget Rent-A-Car Sys., Inc.*, 842 P.2d 208, 210 n.3 (Colo. 1992) (en banc) (dicta). But estoppel usually cannot create coverage for risks falling outside of the insurance policy. *Hartford Live Stock Ins. Co. v. Phillips*, 372 P.2d 740, 742 (Colo. 1962). An exception to this limitation on estoppel exists upon proof of three facts:

1.    The insurer knew of the noncoverage.

2.    The insurer assumed defense of the action without a reservation of rights.

3.    The insured relied to its detriment on the insurer's defense.

*Mgmt. Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 37–38 (Colo. App. 2004). Mr. Medved and his firm argue that these requirements are met here, estopping Evanston from denying a duty to defend the class action. We disagree. Even if Evanston had failed to reserve its rights when assuming the defense, there was no evidence of prejudice.

In urging prejudice, Mr. Medved and his firm contend that they could have settled earlier or used a different attorney if they had known that Evanston would assert coverage defenses. These contentions rest on speculation.

12

Evanston initially agreed to defend under a "reservation of rights" without explaining the reasons for the reservation. Appellants' App'x at 319. Over nine months later, Evanston sent Mr. Medved a reservation-of-rights letter that supplied these reasons. In light of this delay, Mr. Medved and his firm contend that Evanston failed to properly reserve its rights. Even if we were to credit this contention, the initial reservation-of-rights letter had disclosed that Evanston was preserving its right to challenge the existence of a duty to defend.

Mr. Medved and his firm suggest that this disclosure had been useless without an explanation. But Mr. Medved and his firm obtained that explanation from the second, more detailed reservation-of-rights letter months before the start of any settlement talks. Following the second letter, the property owners initially offered to settle for $1.2 million, which Mr. Medved admittedly would have rejected. Roughly two months later, the property owners lowered their offer to $300,000, which Mr. Medved also admittedly would have rejected. The case settled roughly eight months later for $16,250.

All settlement negotiations occurred after Mr. Medved knew the details of Evanston's coverage position, and there is no evidence that the parties could have agreed on a settlement amount before Mr. Medved obtained Evanston's explanation for its reservation of rights. Thus, Mr. Medved and his firm failed to create a genuine issue of material fact

13

regarding prejudice from the inability to secure an earlier settlement. *See St. Paul Mercury Ins. Co. v. Am Bank Holdings, Inc.*, 819 F.3d 728, 739 (4th Cir. 2016) (holding as a matter of law that the insured did not show prejudice because its alleged loss of a settlement opportunity was speculative).

Mr. Medved and his firm also contend that they might have hired different counsel if they had known the reasons for Evanston's reservation of rights. But the undisputed evidence shows that Mr. Medved was satisfied with the counsel hired by Evanston. And Mr. Medved and his firm have pointed to nothing that another attorney would have done differently. Therefore, Mr. Medved and his firm have not presented evidence of prejudice from a lost opportunity to retain different counsel.

In the alternative, Mr. Medved and his firm argue that prejudice is established as a matter of law when an insurer accepts a defense without a reservation of rights. We reject this argument based on *Management Specialists, Inc. v. Northfield Insurance Co.*, 117 P.3d 32 (Colo. App. 2004). There the Colorado Court of Appeals concluded that

- "no presumption of prejudice arises where the insurer disclaims coverage prior to trial" and

- estoppel arises only if the insured had detrimentally relied on the insurer's defense.

*Mgmt. Specialists*, 117 P.3d at 38. The court ultimately held that an insurance company, which had defended the insured for five months

14

without a reservation of rights, was not estopped from asserting coverage defenses in light of the insured's inability to show prejudice. *Id.*

Mr. Medved and his firm point to three Tenth Circuit opinions applying other states' laws for the proposition that prejudice is not required: *Pendleton v. Pan American Fire & Casualty Co.*, 317 F.2d 96 (10th Cir. 1963) (applying New Mexico law), *Braun v. Annesley*, 936 F.2d 1105 (10th Cir. 1991) (applying Oklahoma law), and *Cornhusker Casualty Co. v. Skaj*, 786 F.3d 842 (10th Cir. 2015) (applying Wyoming law). But these opinions applied the states' general estoppel principles in the absence of more specific guidance, and here we have an opinion of the state's intermediate court of appeals on the issue. *See Pendleton*, 317 F.2d at 100–01; *Braun*, 936 F.2d at 1110–11; *Cornhusker*, 786 F.3d at 852–54.

We would not expect the Colorado Supreme Court to jettison the approach of its intermediate appellate court based on the opinions in *Pendleton*, *Braun*, and *Cornhusker*. *See* p. 10, above (discussing the importance of opinions by a state's intermediate appellate court when predicting how the state's highest court would decide). And Colorado's intermediate appellate court concluded that an insured must show prejudice when the insurer had failed to disclaim coverage prior to trial. *See* pp. 14–15, above.

This conclusion does not clearly conflict with *Pendleton*, *Braun*, or *Cornhusker*. For example, in *Pendleton*, the underlying case settled after

two weeks of trial. 317 F.2d at 98. *Braun* involved an insurer attempting to disclaim coverage after an unfavorable verdict. 936 F.2d at 1107. And *Cornhusker* involved an insurer that had failed to tell the insured of a forthcoming withdrawal of the defense, resulting in a default judgment against the insured. 786 F.3d at 847–48. It is unclear whether *Management Specialists* would require a showing of prejudice in these situations. Without a clear conflict, *Pendleton*, *Braun*, and *Cornhusker* do not provide persuasive data that the Colorado Supreme Court would decline to follow *Management Specialists*. And our case is factually distinguishable from *Pendleton*, *Braun*, and *Cornhusker* because Evanston sent an effective reservation-of-rights letter prior to the start of a trial or settlement talks.

* * *

Evanston could be estopped from asserting coverage defenses only if Mr. Medved and his firm had shown prejudice. No such evidence was presented, and Evanston is not estopped from denying a duty to defend.

**7.  Mr. Medved and his firm forfeited their current arguments on the bad-faith claims.**

Mr. Medved and his firm argue on appeal that their counterclaims for bad faith should have survived summary judgment even in the absence of a duty to defend. Mr. Medved and his firm forfeited this argument by failing to raise it in district court.

16

Evanston moved for summary judgment on all claims and counterclaims, including the bad-faith counterclaims. In its motion, Evanston presented evidence and cited legal authority in denying any bad faith. In response, Mr. Medved and his firm presented no argument, evidence, or legal authority to support the counterclaims for bad faith. These omissions resulted in forfeiture of the appellate argument by Mr. Medved and his firm. *See* p. 7, above.

On appeal, Mr. Medved and his firm argue that they preserved the issue by urging coverage and, alternatively, that they did not need to preserve the issue under *Peden v. State Farm Mutual Automobile Insurance Co.*, 841 F.3d 887 (10th Cir. 2016). These arguments are unpersuasive. The first argument fails because an argument not presented to the district court is forfeited even if it relates to an argument that was preserved. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1141 (10th Cir. 2007). The second argument also fails. *Peden* addressed an insurer's alleged bad faith but did not excuse the failure to preserve an appellate argument involving a bad-faith claim. *See generally* 841 F.3d 887.

Mr. Medved and his firm forfeited their appellate arguments on the bad-faith claim. Because Mr. Medved and his firm have not requested plain-error review, we decline to consider their newly presented argument. *See* pp. 7–8, above.

17

**8.     Conclusion**

Evanston had a duty to defend claims incurred by reason of wrongful acts in performing professional services. This duty did not extend to the class action or the Colorado Attorney General's investigation because the underlying allegations had arisen from billing practices, which are not professional services. In addition, Evanston was not estopped from denying a duty to defend the class action. Finally, Mr. Medved and his firm forfeited their appellate arguments opposing summary judgment on their bad-faith claims. Therefore, we affirm the district court's grant of summary judgment to Evanston on all claims and counterclaims.