**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 7, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

STEVEN A. STENDER; INFINITY
CLARK STREET OPERATING,
LLC, on behalf of themselves and
all others similarly situated,

     Plaintiffs - Appellants,

and

HAROLD SILVER,

     Plaintiff,

v.

ARCHSTONE-SMITH OPERATING
TRUST; ARCHSTONE-SMITH
TRUST; ERNEST A. GERARDI,
JR.; RUTH ANN M. GILLIS; NED
S. HOLMES; ROBERT P. KOGOD;
JAMES H. POLK, III; JOHN C.
SCHWEITZER; R. SCOT SELLERS;
ROBERT H. SMITH; STEPHEN R.
DEMERITT; CHARLES MUELLER,
JR.; CAROLINE BROWER; MARK
SCHUMACHER; ALFRED G.
NEELY; LEHMAN BROTHERS
HOLDINGS, INC.; TISHMAN
SPEYER DEVELOPMENT
CORPORATION; RIVER
HOLDING, LP; RIVER TRUST
ACQUISITION (MD), LLC; RIVER
ACQUISITION (MD), LP;
ARCHSTONE-SMITH
MULTIFAMILY SERIES I TRUST;
ARCHSTONE, INC.; AVALONBAY

No. 17-1332

COMMUNITIES, INC.;
ARCHSTONE ENTERPRISE, LP;
ERP OPERATING LIMITED
PARTNERSHIP; EQUITY
RESIDENTIAL,

     Defendants - Appellees.

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:07-CV-02503-WJM-MJW)**

_____

Matthew W.H. Wessler, Gupta Wessler PLLC, Washington, D.C. (Daniel Townsend, Gupta Wessler PLLC, Washington, D.C., Kenneth A. Wexler and Kara A. Elgersma, Wexler Wallace LLP, Chicago, Illinois, and Lee Squitieri, Squitieri & Fearon, LLP, New York, New York, with him on the briefs), for the Plaintiffs-Appellants.

Jonathan D. Polkes, Weil, Gotshal & Manges LLP, New York, New York (Caroline Hickey Zalka, Adam B. Banks, and Justin D. D'Aloia, Weil, Gotshal & Manges LLP, New York, New York, Frederick J, Baumann and Alex C. Myers, Lewis Roca Rothgerber Christie LLP, Denver, Colorado, and Leslie A. Eaton, Gregory P. Szewczyk, and J. Matthew Thornton, Ballard Spahr, LLP, Denver, Colorado, with him on the brief), for the Defendants-Appellees.

_____

Before **BRISCOE**, **BACHARACH**, and **CARSON**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal grew out of a battle between the majority and minority owners of units in an investment vehicle. The majority unitholder wanted to merge, but this would require the minority to sell their units or convert them to shares in a newly created entity. The minority unitholders balked

2

because they wanted to retain their original units, but the majority unitholder approved the merger, terminating the minority's units in the process. The termination of these units led the minority to sue.

Resolution of this suit largely turns on a classic issue of contract interpretation: Did the contract, consisting of a declaration of trust, empower the majority unitholder to approve a merger that eliminated and replaced the minority unitholders' units without providing an opportunity for a class vote? The district court answered "yes" and granted the defendants' motions for summary judgment. We agree with the district court.

1. **The parties create an investment vehicle for interests in real estate.**

The parties created an investment vehicle that comprised an operating trust to buy and sell interests in real estate. This type of investment vehicle is called a "real estate investment trust." To form the trust, investors contributed property in exchange for units (called "A-1 units") in an operating trust. These units carried certain rights like steady distributions and a right of redemption for cash or common stock in the operating trust.

The operating trust was organized as an entity known as an "umbrella partnership real estate investment trust." The umbrella partnership, in turn, was owned by a "parent trust" called the "Archstone-Smith Trust." The

3

parent trust contributed cash to the operating trust (the Archstone-Smith Operating Trust) in exchange for general partnership units.



**2.    The majority unitholder (Archstone-Smith Trust) pursues a merger.**

Before the 2008 market crash, the Archstone-Smith Trust negotiated a sale to a partnership between Lehman Brothers and Tishman Speyer Development Corporation. Under the terms of the sale, the Lehman-Tishman partnership would create a new entity to merge into the operating

4

trust. The merger would eliminate the A-1 units, and owners of these units could either sell the units or exchange them for shares in the new entity.

Unhappy with this choice, the A-1 unitholders sued the Archstone-Smith Trust and others for breaches of contract and fiduciary duties. These claims turn primarily on whether the declaration of trust unambiguously allowed the operating trust to merge, which would terminate the A-1 units without a class vote of A-1 unitholders. The district court concluded that the operating trust could merge and terminate the A-1 units in the process, so the court granted summary judgment to the defendants. We agree with the district court's conclusion and the grant of summary judgment.

### 3. We engage in de novo review, applying Maryland's substantive law.

To decide the appeal, we must construe the declaration of trust. Because the district court's construction of the declaration of trust resulted in a grant of summary judgment, we engage in de novo review, viewing the evidence in the light most favorable to the A-1 unitholders. *Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1167 (10th Cir. 2007).

The parties agree that Maryland law governs construction of the declaration of trust. Applying Maryland law to matters of construction, the district court could grant summary judgment to the defendants only if the declaration of trust had unambiguously allowed termination of the A-1 units through a merger without a class vote of A-1 unitholders. *See Higby*

5

*Crane Serv., LLC v. Nat. Helium, LLC*, 751 F.3d 1157, 1160 (10th Cir. 2014) ("Summary judgment on a contract dispute should be granted if the contractual language is unambiguous.").

4.  **The A-1 unitholders' contract claim fails as a matter of law because the declaration of trust unambiguously allowed the operating trust to merge with another entity and terminate the A-1 units in the process.**

    Maryland law provides that

    - a real estate investment trust can merge with another entity unless the declaration of trust prohibits mergers and

    - a merger can result in the termination of the trust's units in the existing entity.

Md. Code Ann., Corps. & Ass'ns §§ 8–501.1(b), 8–501.1(o)(3). The resulting issue is whether the declaration of trust prohibited the Archstone-Smith Trust from terminating the A-1 units in the merger without a class vote of A-1 unitholders.

The defendants point to §§ 5.3(B) and 9.2(B) of the declaration of trust; the A-1 unitholders rely on §§ 5.3(A), 12.3, and 12.4. The threshold procedural question is whether the A-1 unitholders preserved their reliance on § 5.3(A). We answer "no."

To avoid forfeiture, the A-1 unitholders had to fairly present the district court with the substance of their current argument involving § 5.3(A). *See FDIC v. Kan. Bankers Surety Co.*, 840 F.3d 1167, 1169–70 (10th Cir. 2016) (holding that an argument about contractual language was

6

forfeited because it had not been fairly presented in response to the motion for summary judgment). This section provides: "The Trustee [the Archstone-Smith Trust] may not take any action in contravention of any express prohibition or limitation of this [declaration of trust] without an amendment of such provision adopted in accordance with Article 12 hereof and [Title 8 of the Annotated Code of Maryland, Corporations and Associations Article]." Appellants' Rec. Excerpts at 558.

On appeal, the A-1 unitholders present two contentions:

1. Section 5.3(A) prohibited the operating trust from undermining the attributes of A-1 units without amending the declaration of trust.

2. Amendment of the declaration of trust required compliance with §§ 12.3 and 12.4, which would necessitate a vote of A-1 unitholders.

The threshold issue is whether the A-1 unitholders preserved the first contention by raising it in district court when responding to the defendants' motions for summary judgment. The A-1 unitholders argue that they did preserve the issue, relying on

- a footnote in their summary-judgment brief, and

- two references to § 5.3(A) when listing undisputed facts and material factual disputes.

We conclude that the A-1 unitholders did not preserve their current argument involving § 5.3(A).

In the footnote citing § 5.3(A), the A-1 unitholders discussed limitations on the Archstone-Smith Trust's authority to approve a *reverse* merger. In a reverse merger, a publicly traded company acquires a private entity, which survives the merger. *SEC v. Cavanagh*, 445 F.3d 105, 108 n.6 (2d Cir. 2006). In district court, the A-1 unitholders relied on the existence of a reverse merger, arguing that the declaration of trust had not permitted the operating trust to absorb the Lehman-Tishman partnership's assets. For this argument, the parties clashed on the impact of § 5.3(B). In the footnote, the A-1 unitholders argued that the Archstone-Smith Trust's participation in a reverse merger would breach multiple provisions, including § 5.3(A). But § 5.3(A) is not mentioned again in the A-1 unitholders' summary-judgment brief.

On appeal, the A-1 unitholders have dropped their challenge to the Archstone-Smith Trust's authority to approve a reverse merger.[1] Instead, the A-1 unitholders have focused on the termination of their units without a class vote. The unitholders' reference in the footnote to a reverse merger has nothing to do with their argument on appeal.

The A-1 unitholders also cite the district court's Docket No. 592, page 22, which lists undisputed material facts. But nothing on the cited page refers to § 5.3(A); the A-1 unitholders apparently meant to cite page

---

[1] In their appeal briefs, the A-1 unitholders never mention the term "reverse merger."

18. There the A-1 unitholders note: "As an express prohibition or limitation of the [declaration of trust], Section 5.3B required an amendment to its terms, as set forth in Section 5.3A, before there could be any deviation from its terms." Again, this statement was addressing whether the trustee could approve a *reverse* merger, which is not involved in the appeal.

In addition, the A-1 unitholders point to the district court's Docket No. 590, page 14. This page comprises the A-1 unitholders' response to the defendants' statement of undisputed material facts. In this response, the defendants quote the declaration of trust, which states that the trust could exercise the powers set forth in § 5.1(A). The A-1 unitholders admitted this fact, adding that these powers are limited by § 5.3(A), which is quoted in full. But this discussion does not contain an argument involving breach of § 5.3(A). Instead, the A-1 unitholders relied solely on §§ 12.3 and 12.4, arguing that the Archstone-Smith Trust could change the attributes of A-1 units only by amending the declaration of trust through a class vote.

Because the A-1 unitholders did not alert the district court to their current argument involving § 5.3(A),[2] this argument is forfeited. *See Evanston Ins. Co. v. Law Office of Michael P. Medved, P.C.*, 890 F.3d

---

[2] The district court pointed out that "the only portion of section 5.3 to which any party has pointed as even arguably applicable to the contract claims is section 5.3B(ii)." Appellants' Rec. Excerpts at 23.

9

1195, 1202–03 (10th Cir. 2018) (holding that presentation of an argument in district court was insufficient to preserve a related, but distinct, argument made for the first time on appeal). We therefore consider the remaining provisions invoked by the parties: §§ 5.3(B), 9.2(B), 12.3, and 12.4.[3] Together, these sections governed "termination transactions" and "amendments."

Under § 5.3(B) a trustee may carry out a "termination transaction" under § 9.2(B). Section 9.2(B) then defines a "termination transaction" to include a merger. For a merger under § 9.2(B), three requirements exist:

1.  The merger must be approved by unitholders holding a majority of the outstanding units.

2.  Substantially all of the surviving entity's assets must consist of units.

3.  Under the merger, holders of the A-1 units must be entitled to receive the same amount for each unit that is to be received by the Archstone-Smith Trust's shareholders.

These requirements were satisfied. The Archstone-Smith Trust voted for the merger, and this vote accounted for roughly 89% of the outstanding units in the operating trust. And substantially all of the surviving entity's assets consisted of units. In addition, each A-1 unitholder had a right to the same amount per unit that would become available to the Archstone-Smith

---

[3]  We express no opinion on whether the outcome might have been different if the A-1 unitholders had preserved their current argument involving § 5.3(A).

Trust's shareholders. As a result, the declaration of trust unambiguously allowed the Archstone-Smith Trust to approve the merger.[4]

The A-1 unitholders insist that the Archstone-Smith Trust failed to comply with §§ 12.3 and 12.4, which govern amendments. To address this argument, we are guided by the Delaware courts, which Maryland courts regard as persuasive on matters of corporate law. *See Oliveira v. Sugarman*, 152 A.3d 728, 736 n.4 (Md. 2017) ("This Court frequently looks to Delaware courts for guidance on issues of corporate law."). And the Delaware Supreme Court states that "[w]hen a certificate . . . grants only the right to vote on an amendment, . . . the preferred [unitholders] have no class vote in a merger." *Elliott Assocs., L.P. v. Avatex Corp.*, 715 A.2d 843, 855 (Del. 1998). This pronouncement would be "highly persuasive" to the Maryland Supreme Court. *See Kramer v. Liberty Prop. Trust*, 968 A.2d 120, 134 (Md. 2009) (treating Delaware courts' interpretation of a Delaware corporate statute as "highly persuasive" on the proper interpretation of a similar Maryland corporate statute because Delaware courts have expertise on corporate law).[5]

---

[4]  Both sides point to extrinsic evidence of the parties' intent. But extrinsic evidence cannot alter the meaning of unambiguous provisions in the declaration of trust. *See Calomiris v. Woods*, 727 A.2d 358, 361–62 (Md. 1999).

[5]  The Delaware legislature has codified this principle. *See Warner Commc'ns Inc. v. Chris-Craft Indus., Inc.*, 583 A.2d 962, 969–70 (Del. Ch.) (discussing Del. Code Ann. tit. 8, § 251(c)), *aff'd*, 567 A.2d 419 (Del.

11

Given this highly persuasive pronouncement, Maryland law would not entitle the A-1 unitholders to a class vote on the merger. Without a class vote of A-1 unitholders, the Archstone-Smith Trust had enough units to approve the merger, which resulted in termination of the A-1 units.

The A-1 unitholders point out that they were entitled to a class vote on amendments, but nothing was amended until after the merger and the termination of A-1 units. As a result, the absence of a class vote did not constitute a breach of the declaration of trust. Given the absence of a breach, the district court properly granted summary judgment to the defendants on the contract claim.

**5.      The defendants did not breach their fiduciary duties.**

The A-1 unitholders sued the Archstone-Smith Trust and others not only for breaching the contract but also for breaching fiduciary duties. The district court rejected the claim for breach of fiduciary duties, reasoning that

- the A-1 unitholders' reasonable expectations were measured by their contractual rights and

- the Archstone-Smith Trust did not violate any of the A-1 unitholders' contractual rights.

---

1989). Similarly, the Maryland legislature has not given preferred shareholders the right to a class vote for approval of a merger. *Compare* Del. Code Ann. tit. 8, § 251(c) (requiring a vote by the majority of the outstanding stock), *with* Md. Code Ann., Corps. & Ass'ns §§ 3–105, 2–507 (requiring mergers to be approved in compliance with the procedures in Title 2 of the Maryland corporate statute, which specifies that each share is entitled to one vote "regardless of class").

12

On appeal, the A-1 unitholders contend that termination of their units was oppressive and unfair. We reject these contentions because the Archstone-Smith Trust complied with the declaration of trust, the A-1 unitholders are judicially estopped on their new theory of oppression, and they forfeited their new theory of unfairness.

Under Maryland law, a majority unitholder engages in oppression by frustrating a minority unitholder's reasonable expectations upon committing capital to the enterprise. *Edenbaum v. Schwarcz-Osztreicherne*, 885 A.2d 365, 378 (Md. Spec. App. 2007). On appeal, the A-1 unitholders contend that their reasonable expectations were not met. This theory is based partly on the declaration of trust and partly beyond it.

For the expectations embodied in the declaration of trust, we have already concluded that the Archstone-Smith Trust complied with its contractual obligations, which precludes liability for breaching a fiduciary duty arising from the declaration of trust. On appeal, however, the A-1 unitholders also argue that their reasonable expectations had surpassed the express provisions in the declaration of trust. For this part of the claim, the district court properly applied judicial estoppel.

Judicial estoppel is an equitable doctrine designed to "protect the integrity of the judicial process" by preventing parties from changing their legal positions in the same case based on the "the exigencies of the

13

moment." *New Hampshire v. Maine,* 532 U.S. 742, 749–50 (2001). In deciding whether to find judicial estoppel, the court can consider

- whether a party is now asserting a position that is "'clearly inconsistent'" with its prior position,

- whether that party successfully convinced a court to accept the earlier position, and

- whether it would be unfair to allow that party to change its position.

*Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013) (quoting *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007)).

When reviewing a finding of judicial estoppel, we apply the abuse-of-discretion standard. *Id.* at 1086. The district court could abuse its discretion only by clearly erring in its judgment, making an impermissible choice, or acting in a way that was arbitrary, capricious, whimsical, or manifestly unreasonable. *Id.*

The issue of judicial estoppel stemmed from the row in district court over class certification. Early in the battle, the court granted class certification on the A-1 unitholders' claims for breach of fiduciary duties. This grant of class certification led the defendants to move for reconsideration, arguing that the claims would require an inquiry into each unitholder's expectations. The A-1 unitholders disagreed, denying that the

14

claims would require individualized consideration of their expectations, arguing:

> Under Maryland law, reasonable expectations are embodied in contracts to which shareholders are parties. The reasonable expectations of Plaintiffs and the Class were thus memorialized in the Declaration of Trust . . . and any other agreements defining the relationships of the parties. Subjective concerns are irrelevant to the inquiry . . . .

Appellants' Rec. Excerpts at 260; *see also id.* at 261 ("Plaintiffs' reasonable expectations were memorialized in the [Declaration of Trust]."); *id.* at 262 ("The determination of Archstone-Smith Trust's liability at trial will therefore consider the Defendants' conduct—not how any individual Class member was affected by it—in relation to the expectations embodied in the [Declaration of Trust]." (emphasis omitted)); *id.* at 263 ("Plaintiffs here will prove the Archstone Defendants' liability through their uniform course of conduct intending to defeat the reasonable expectations contained in the single overarching document—the [Declaration of Trust].").

The district court relied partly on this argument in denying the defendants' motion to reconsider. In denying the motion, the court reasoned that the majority of A-1 unitholders would derive their expectations "mostly, perhaps entirely, from the Declaration of Trust and its connected agreements." Appellee's Supp. Rec. Excerpts at 120. Thus, the A-1 unitholders obtained a favorable ruling by tying their reasonable

15

expectations to the declaration of trust. Given this ruling, the district court applied judicial estoppel to prevent the A-1 unitholders from arguing that their reasonable expectations could exceed the promises in the declaration of trust.

In our view, the district court acted within the bounds of its discretion. The A-1 unitholders obtained denial of the motion to reconsider class certification by treating the declaration of trust as the benchmark for the A-1 unitholders' reasonable expectations. Given the denial of this motion, the district court could reasonably reject the A-1 unitholders' effort to back-track when opposing summary judgment.[6] The district court thus acted within its discretion in applying judicial estoppel.

In their reply brief, the A-1 unitholders also suggest that the defendants breached their fiduciary duties by violating standards of "'fair dealing'" or "'fair play.'" Appellants' Reply Br. at 24 (quoting *Edenbaum v. Schwarcz-Osztreicherne*, 885 A.2d 365, 378 (Md. Ct. Spec. App. 2005)). But the A-1 unitholders had not made this argument in district court when

---

[6] After the ruling, the defendants sought an interlocutory appeal over the issue of class certification. Objecting to interlocutory review, the A-1 unitholders again tried to confine the defendants' fiduciary duties to obligations arising in the declaration of trust. *See* Plaintiffs' Opp. to Mot. for Leave to File Reply at 3–5, *Archstone-Smith Trust v. Stender*, No. 15-707 (10th Cir. Dec. 14, 2015). We declined to entertain an interlocutory appeal, just as the A-1 unitholders had urged. So the A-1 units again obtained a favorable decision by confining the Archstone-Smith Trust's fiduciary duties to the reasonable expectations memorialized in the declaration of trust.

objecting to summary judgment. Thus, the A-1 unitholders forfeited their new suggestion of unfairness as a basis for liability as a fiduciary. *See Evanston Ins. Co. v. Law Office of Michael P. Medved, P.C.*, 890 F.3d 1195, 1202–03 (10th Cir. 2018); *see also* pp. 9–10, above.

\* \* \*

In district court, the A-1 unitholders tied their reasonable expectations to the declaration of trust. As discussed above, however, the Archstone-Smith Trust had complied with the declaration of trust. So the district court correctly granted summary judgment to the defendants on the claims involving breaches of fiduciary duties stemming from the declaration of trust.

The district court also acted within its discretion in applying judicial estoppel to prevent the A-1 unitholders from basing their reasonable expectations on sources outside the declaration of trust.

Finally, the A-1 unitholders forfeited their new theory of unfairness.

6.    **The A-1 unitholders abandoned their remaining claims.**

In district court, the A-1 unitholders also claimed unjust enrichment, tortious interference with contract, civil conspiracy, and aiding-and-abetting a breach of fiduciary duty. These claims have been abandoned.

In their opening brief, the A-1 unitholders mention their claims for tortious interference and aiding-and-abetting only in footnotes, stating that

17

- reversal on the contract claim would require reversal on the claims for tortious interference and

- reversal on the claim for breach of fiduciary duty would require reversal on the aiding-and-abetting claims.

These conclusory assertions in footnotes do not adequately present us with an argument on these claims, so we consider them abandoned. *See Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016) ("A party's offhand reference to an issue in a footnote, without citation to legal authority or reasoned argument, is insufficient to present the issue for our consideration.").

And the A-1 unitholders never mention their claims for unjust enrichment and civil conspiracy. As a result, these claims are also considered abandoned. *See Coleman v. B-G Maint. Mgmt., of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997).

## 7. Conclusion

The overarching issue involves the Archstone-Smith Trust's authority to approve the merger without amending the declaration of trust. This declaration was governed by Maryland law, which allows a real estate investment trust to merge and, in the process, terminate preferred units like the A-1 units. Given this authority under Maryland law, the declaration of trust expressly allowed the Archstone-Smith Trust to unilaterally approve the merger, which resulted in termination of the A-1 units as a matter of law.

The A-1 unitholders' sole preserved argument on the contract claim involves provisions requiring a class vote of A-1 unitholders to amend the declaration of trust. But a merger would not trigger the contractual provisions governing amendments. So the Archstone-Smith Trust could approve the merger, which resulted in termination of the A-1 units without a need to amend the declaration of trust.

It's true that the declaration of trust was amended after the merger. But by then, there were no longer any A-1 units, so there were no longer any A-1 unitholders. The district court was therefore right to conclude as a matter of law that the Archstone-Smith Trust had not breached any contractual duties. This conclusion entitled the defendants to summary judgment on the contract claim.

Given the absence of a contractual breach, the defendants were also entitled to summary judgment on the claims for breach of fiduciary duty. In district court, the A-1 unitholders tied their reasonable expectations to the declaration of trust, which had not been breached. As a result, the district court properly applied judicial estoppel to the A-1 unitholders' new effort to base their reasonable expectations on sources outside the declaration of trust. And the A-1 unitholders forfeited their new theory of unfairness.

We therefore affirm.